June, 1810.

GUNN
v.
SCOVIL.

An action of *indebitatus assumpsit* may be maintained on the implied promise arising merely from the use and occupation of real estate, by permission, without an express promise to pay rent.

MOTION for a new trial.

This was an action of *indebitatus assumpsit* for the use and occupation of a certain piece of land, and a house standing thereon.

The defendant pleaded the general issue; and, on the trial, it appeared that the defendant, on the 1st of *January*, 1800, went into the possession, use and occupation of the premises under the plaintiff, and by his permission; and from that time to the commencement of this action, in *February*, 1806, took all the rents and profits to himself. The court charged the jury, that an action of implied *assumpsit* could not be maintained in this state at common law, for use and occupation, where the defendant did not go in under a lease, written or parol, containing an express agreement to pay rent. There being no evidence of such a lease, the jury, in pursuance of this direction, found a verdict for the defendant. The plaintiff moved for a new trial; and the question was reserved for the opinion of the nine judges.

*Ingersoll and Staples*, in support of the motion, contended,

1. The action on an implied *assumpsit* for use and occupation of land, to recover so much as such use and oc-

cupation is worth, must, on general principles, stand on the same ground as all other implied contracts do. It is impossible to say, that in one case the law obliges the person who has the use of the property to pay what that use is worth, and that in the other case it does not so oblige him. It is true, that formerly, in *Great Britain*, the judges puzzled themselves with a metaphysical idea, that for the use and occupation of lands it would be difficult to maintain an action, as it would *savour of the realty;* yet that difficulty was got over where there was an *express* undertaking to pay as much as the use and occupation was worth; the court holding, in such case, that the contract was *personal;* and there was a good consideration for it. In one or two instances, as will appear by the cases referred to in 1 *Com. Dig.* 195. (*Rose's* ed.) the courts embraced the idea that the action would lie on an *implied* undertaking. Indeed, by determining that it would lie when there was an *express* promise, it would necessarily follow that it would lie when there was an implied one only. To clear up all doubts, the stat. 11 *Geo.* II. c. 19. was passed; from which *Espinasse* makes an inference, as may some other elementary writers, that the statute first gave the action of *implied assumpsit* for the use and occupation of lands. 1 *Esp. Dig.* 20. This, however, is a wrong inference.

2. That however the law may have stood in *Great Britain*, yet in this state the determinations have been, that this action would lie; and with great reason, as otherwise there would often be a failure of justice. *Rogers* v. *Tracy*, 1 *Root*, 233. *New-London* v. *Emerson*, 2 *Root*, 372. In some of our sister states this action has been sustained. *Hayes* v. *Acre, Cam. & Nor.* 19. *Haldane et al.* v. *Duche's Executors*, 2 *Dal.* 176.

*Daggett* and *N. Smith*, contra. We contend that the charge to the jury was correct. We have no statute applicable to the question. It is to be decided by the

June, 1810.

GUNN
v.
SCOVIL.

principles of the common law. In proof of the position, that the law raises no such promise as the plaintiff claims, we rely on the following authorities: *Bull. N. P.* 137. *Esp. Dig.* 20. *Peake's Ev.* 241. (or 257, 258. 3d ed.) *Green* v. *Harrington, Hutt.* 34. 1 *Vin. Abr.* 271. *Brett* v. *Read, Cro. Car.* 343. *Johnson* v. *May,* 3 *Lev.* 150. 2 *Com. on Contr.* 509. 1 *Chitty on Plead.* 97. By these authorities it is apparent, that no action at common law was given upon an implied promise to pay as much for the use and occupation of land as it was reasonably worth. Where the demise was by deed, *debt* was maintainable; and if there was no deed, but an express promise, *assumpsit* lay. By stat. 11 *Geo.* II. c. 19. s. 14. the common law was altered, and this action given. As this statute is not operative here, no action of this kind can be supported.

The counsel for the plaintiff meet these remarks by saying, that it is reasonable where one has used property, that he should pay the worth of its use. This is true; but on examination, the observation will be found not to be of much weight in this case. It is believed, that the cases are very rare in which houses and lands are occupied on rent, except that rent is fixed by an express agreement, either written or parol; and it may well be doubted if it be expedient to encourage such a careless and negligent practice as seems to be the foundation of this argument. There is no case in the *English* books in which this action has been sustained. In the conflicting decisions mentioned, no proof is seen to the point in debate; and it would seem that the making of the statute furnishes evidence that the common law is clearly against the position of the plaintiff.

BALDWIN, J. The question in this case is, whether the action of *indebitatus assumpsit* can be supported, in this state, on the implied promise, arising merely from

6

use and occupation of real estate, by permission, and without an express promise to pay rent?

It is agreed, that this action is now in constant use in *England*; but it is contended, on the part of the defendant, that it is there sustained solely by force of the stat. of 11 *Geo*. II.; and on the part of the plaintiff, that that statute is merely in affirmance of the common law. As we have no statute on the subject, it is agreed, if the action is sustained here, it must be on common law principles.

If we resort to the *English* authorities, we find the cases there decided, before the statute, exhibit so much doubt and uncertainty on this question, as to furnish sufficient ground for the interference of the legislature.

Some of the cases cited in the argument, exhibit attempts to recover in *indebitatus assumpsit*, when rent was actually reserved by lease, under hand and seal, by which the simple contract was absorbed in the specialty. Wherever this appeared, or might be inferred, the court uniformly decided that the action could not be sustained.(*a*) They would so decide now. The statute has made no difference in this respect. Another class of cases consider the question, whether a recovery can be had in this action, upon an express promise, but without deed, to pay a specific rent. In such cases *indebitatus assumpsit* was generally sustained before the statute,(*b*) but not without strong opposition from some of the judges, on the ground that the contract *savoured of the realty*, and that *debt* was the proper remedy;(*c*) and sometimes the decision was, that debt was the *only* remedy.(*d*)

An express promise by parol to pay a *quantum meruit* for the use, has been repeatedly adjudged good ground for recovery in this action; for, as it was anciently held, the sum being uncertain, debt would not lie, nor could

(*a*) *Cro. Eliz.* 242. *Cro. Car.* 343. *Alleyn*, 29. *Hutt.* 34.
(*b*) *Cro. Jac.* 598. *Cro. Eliz.* 118. Cases cited in *Cro. Car.* 343. 415.
(*c*) *Cro. Car.* 415. *Cro. Eliz.* 859. 　　(*d*) *Cro. Eliz.* 786.

June, 1810.

GUNN
v.
SCOVIL.

there be a distress, and unless this action could be sustained, the party would be without remedy.(a)

Whether from use and occupation by permission, the law will raise the promise, and support *indebitatus assumpsit*, seems to be a question of more doubt. The case of *How* v. *Norton*, as reported, 1 *Lev* 179. seems to support the action, but from the same case, as reported in *Sid.* 279. it appears that the court sustained the action, because, after verdict, they would presume an express promise proved. In the case of *Acton* v. *Symon*, *Cro. Car.* 415. *assumpsit* was supported on an express promise, though *Croke*, J. doubted, because the personal contract was determined by the lease on which the plaintiff might have debt. In the decision of that case, the court incidentally decided, that the law does not raise a promise in such case; it must be express. Such *dicta* are often found; and most of the elementary writers have asserted, that an action cannot be supported on the implied promise. Yet I presume no case can be found expressly in point, where this naked question has been presented to the consideration of the court. *Wooddeson* (vol. 3. p. 152.) acknowledges he knows of no solemn decision in point, but insists that such promise may well be implied, though he agrees it was anciently said it could not.

From a review of the whole, it appears, that though anciently the action of debt was conceived to be the only proper remedy to recover rent in any shape ; yet, as the action of *assumpsit* has gradually taken the place of debt on simple contracts, it has been permitted in lieu of debt, in the first place, on a promise of a specific sum for rent, and afterwards on a specific promise to pay for the use of real estate as much as it was worth. " For," (as *Wooddeson* says,) "there being no certain rent, the plaintiff could neither distrain, nor properly, perhaps, bring an

(a) 3 *Mod.* 73. *Skin.* 238. 242.

action of debt, this seems the plaintiff's genuine remedy: if, therefore, it may be allowed at all," (he adds,) "the promise may well be implied."

The action of *indebitatus assumpsit* is a remedy highly favoured in law, being equally beneficial to both parties. In its principles it is founded in equity, and the benefits resulting from it have constantly, from experience of its utility, been extended. This has ever been deemed the proper remedy to recover on an implied promise for the use of personal property. It certainly is equally reasonable and equitable that he who enjoys, by my permission, the use of my lands, should also in the same manner be liable to pay for that use. Technical rules alone can prevent it, and that because the subject is real property. We may, then, well inquire, is the distinction founded in reason? If it is, the same objection will equally apply to a special parol contract, on which this action has often been supported.

Thus, it appears to me, that since the use of this action has of late been greatly extended, it would, on fair common law principles, now be sustained in *England*, if no statute existed. But, if I am wrong in this conclusion, it will not follow that the action cannot be supported here. Our adoption of their system admits of reasonable exceptions. No decisions in this state have been produced to show that the action cannot be maintained; and I understand it has long been used in such cases without a question. It has once, (in the case of *Rogers* v. *Tracy*, 1 *Root*, 233.) when opposed, been supported by the superior court, and the implied promise expressly recognised.

Unless this remedy can be had, it is agreed the plaintiff has none. When a convenient remedy, which appears adequate, reasonable, and proper, has thus been introduced and pursued, we ought to be compelled by imperious reasons, before we deprive a party of it, and thus deny him all redress.

June, 1810.    I am therefore of opinion, that the law is so in *Con-*
             *necticut,* that *indebitatus assumpsit* can be supported, on
GUNN         the implied promise arising merely from use and occupa-
  v.         tion of real estate by permission; and, of course, that we
SCOVIL.      ought to advise a new trial.


             The other judges severally concurred in this opinion.
                                        New trial to be granted.