## LOCKWOOD AND OTHERS *vs.* LOCKWOOD AND OTHERS.

The action of book debt will not lie for the use and occupation of real estate, where there has never been an actual occupancy; but when the defendant has actually occupied, during a portion of the period for which the plaintiff claims to recover, such action is the proper remedy, to recover such compensation as the plaintiff may be entitled to.

Where a party enters into possession of real estate, as tenant of the owner, under an agreement which is invalid, by reason of the statute of frauds, or for other cause, and continues in such possession, paying yearly rent therefor, which is received and accepted as such, he becomes a tenant from year to year, and may be considered as holding, according to such agreement, which, in an action to recover an unpaid balance of rent, may be resorted to, as evidence, for the purpose of calculating the amount for which he is liable.

If such tenant from year to year, abandons the occupancy of the demised premises, before the expiration of a year, without the consent of the landlord, he will not thereby exonerate himself from the payment of the rent for the residue of the year; nor will he be so exonerated, by the neglect of the landlord to make repairs, when there was no agreement to keep the premises in repair, and their condition, when left, was not materially different from what it was, at the commencement of the year; nor by reason of inconsiderable injuries occasioned by fire, where no demand is made upon the landlord, to repair such injuries.

THIS was an action of debt on book. The cause was referred to an auditor, who made a special report, in which he

stated, that the plaintiffs' account consisted of a single item, for the rent of a store, from June 7th, 1850, to April 1st, 1851, at the rate of $120 a year. The store was situated in Norwalk, and owned by the plaintiffs, as heirs at law of their father, Buckingham Lockwood, who died, February 18th, 1850. On the first of April, 1840, it was by him rented to one Bennet, who occupied the same under a parol lease, as tenant from year to year, at the rate of $120, payable quarterly, until the 7th of November, 1847, when he transferred his lease to the defendants, to be occupied by them, on the same terms, as in the original lease to him; and the deceased received rent of them, and accepted them as his tenants, on the aforesaid terms. They continued to occupy the store, under the deceased, during his life, and under the plaintiffs, until the 22d of July, 1850, when they left the store, and it remained vacant, during the residue of the term. The rent was paid to the deceased, until November 7th, 1849, and to the plaintiffs, from that time to the 7th of June, 1850. There was no change of the time when the lease from year to year should commence and terminate, and it remained the same as when Bennet occupied.

The defendants claimed, that they had a right to quit the store, before the term expired, and were not liable to pay rent afterward, because it was out of repair, and not tenantable, and the plaintiffs knew it, and neglected and refused to make the necessary repairs.

There was no express agreement ever made by the deceased, or the plaintiffs, to keep the store in repair, and the plaintiffs claimed, that the law imposed no such obligation upon them, and objected to any evidence, to prove that the store was out of repair.

The auditor admitted the evidence, subject to the opinion of the court, and found, that the store was old and decayed, that the roof leaked, the stoop was decayed, a cellar window and shutter were gone, at the time the defendants took

the lease from Bennet, and the defendants knew it, and the condition of the store. In August, 1849, the deceased authorized the defendants to make such repairs as seemed indispensable, and they did so, and their bill of repairs was allowed, in the settlement made November 7th, 1849. On the 8th or 9th of July, 1850, the cellar stairs took fire, and were partly consumed ; but no other part of the store was burnt, and, in extinguishing the fire, some of the windows and window shutters were injured, and some other damage was done to the store ; but the injury was not very serious, and might have been repaired in a short time, and without much expense, and it was necessary that it should be done, as without it, the goods in the store were not safe. The plaintiffs knew that repairs were necessary, but did not make them, and were not requested, by the defendants, to make them.

On the second day after the fire, the defendants hired another store, and, soon after, commenced removing their goods, and having removed them, on the 22d day of July, 1850, tendered to the plaintiffs, the sum of sixteen dollars, for the rent from June 7th, to that time ; and also, the keys of the store, both of which the plaintiffs refused to accept. The store was in as good repair, until the fire, as it had been, at any time while the defendants occupied it, ordinary usage excepted.

If, in the opinion of the court, the evidence objected to as aforesaid, was admissible, and from the facts stated in the report, the defendants were not liable for the rent, after they quit the premises, then the auditor found the issue in favor of the defendants. But, if the court should be of opinion, that the evidence was not admissible, or if said facts are an insufficient defence against the plaintiffs' demand, then the auditor found the issue for the plaintiffs, and $109.44 damages.

At the term of the superior court, holden in Fairfield county, in April, 1853, the case was reserved for the advice of this court.

*Butler* and *Carter,* for the plaintiffs, contended, 1. That the legal relation of landlord and tenant, existed between the plaintiffs and defendants; the defendants being tenants, from year to year. 1 Sw. Dig., 91, 132. A tenancy from year to year, until it is determined by a notice to quit, is the same as a tenancy for years. *Izon* v. *Gorton,* 35 E. C. L., 201. *Bacon* v. *Brown,* 9 Conn. R., 338.

2. That the auditor's report found, that the landlord never bound himself to repair, and, if there is no agreement to repair, the tenant takes the premises, for better or for worse. *Fowler* v. *Bott,* 6 Mass., 63. *Westlake* v. *Degraw,* 25 Wend., 669. *Mumford* v. *Brown,* 6 Cow., 476. *Cleves* v. *Willoughby,* 7 Hill, 83. *Hart* v. *Windsor,* 12 Mee. & Wels., 68.

3. That there is no implied warranty, in this case, that the premises shall be fit for any specific purpose. The tenants used them for such purpose as they chose; and that purpose is not disclosed in the finding. The duty to make necessary repairs devolved upon the tenants, as incident to the relation. 4 Kent's Com., 110.

4. That no demand, or refusal to repair, is claimed; and the plaintiffs had a right to presume, that the defendants would make the necessary repairs, as tenants; or because they were rendered necessary, by their own negligence.

5. That the defendants have not shown, that the fire was not caused by their own negligence. The presumption is against them, and they have not rebutted it. In *Izon* v. *Gorton,* the apartments were consumed by an accidental fire; and yet the tenants were holden liable for the rent.

*Dutton* and *Ferre,* for the defendants, contended, 1. That in this state, book debt, for the use and occupation of real estate, is a statutory remedy, and only concurrent with *general assumpsit.* Stat. 1849, p. 112. *Beach* v. *Mills,* 5 Conn. R., 443. The latter remedy is authorized by the common law of this state, where there has been an actual occupancy.

In England it is founded entirely upon the statute; not having been maintainable there at common law. *Gunn* v. *Scovill,* 4 Day, 228. *Cleves* v. *Willoughby,* 7 Hill, 83.

A parol tenancy from year to year, in this state, confers upon the tenant no such "holding," as the English cases recognize. Here, the landlord may, at any time, make entry, and maintain ejectment; and the tenant is remediless at law. 1 Sw. Dig., 137. *Benedict* v. *Benedict,* 5 Day, 475. *Eaton* v. *Whittaker,* 18 Conn. R., 231. The tenant can not plead a license; for that creates only an estate at will, which is determined by the entry. He can not give in evidence his parol lease, for that is void, by the statute of frauds. *Comes* v. *Lamson,* 16 Conn. R., 246. There being, then, no "holding," and no actual occupation, no basis is left for this action.

2. That it is a defence to an action of *assumpsit,* for use and occupation, to show an abandonment of premises, by the tenant, where, through the default of the landlord, the tenant could have no beneficial occupation of the premises. And, where such occupation is rendered impossible, by fire, lightning, or any cause of like nature, the refusal or neglect of the landlord, to put the premises in repair, constitutes such default. *Edwards* v. *Hetherington,* 16 E. C. L., 271. *Salisbury* v. *Marshall,* 19 *id.,* 275. *Smith* v. *Marrable,* 41 *id.,* 263.

WAITE, J. It has been holden, that, in this state, an action of *indebitatus assumpsit* may be sustained, upon an implied promise, arising out of the use and occupation of real estate, by permission of the owner, without proof of any express promise to pay rent. *Gunn* v. *Scovil,* 4 Day, 228. And, by a recent statute, the action of debt on book, was made a remedy, co-extensive with the action of general *assumpsit.* Statutes, title 1, sect. 221.

In the first place, it is claimed, that this action can not be sustained, unless there has been an actual occupation of the

store, by the defendants,—and this is undoubtedly true ; and so are the authorities. *How* v. *Kennet*, 3 A. & E., 659, (30 E. C. L., 175.) *Richardson* v. *Hall*, 1 B. & B., 50, (5 E. C. L., 14.) But it is expressly found, by the auditor, that, during a portion of the period, for which the plaintiffs claim to recover, the defendants were in the actual occupation of the premises, and the question rather is, what measure of compensation the plaintiffs are entitled to receive, for such occupation, in the manner, and under the circumstances, detailed in the report. It is also found, that they were tenants from year to year, at a stipulated rent, and had so been, for several years,—and that, within four months after the commencement of the year, they abandoned the store, without the permission of the plaintiffs, and it remained vacant until the end of the year. What measure of compensation are the plaintiffs entitled to receive, for such an occupancy ?

The defendants say, only such a proportion of the rent, as the period of their occupancy bears to the whole year,—and this amount they have tendered to the plaintiffs. But to this proposition, we can not, upon any principle, yield our assent. The plaintiffs may well say that, *in hæc fœdera non venimus.* We leased you the store, at a specified rent, for a year, but we never agreed, that you might occupy it one-third of a year, for a corresponding proportion of the year's rent. A contract for the rent of a building for a year, at a specified price, does not imply an agreement, that the tenant may occupy it, for such portion of the time as he pleases, at a proportioned rent.

In a similar case, Littledale, J., said : " Under the contract between these parties, the rent was payable half yearly, for a half year's occupation. That was an entire contract, and could not be apportioned, without the assent of both parties." *Hall* v. *Burgess*, 11 E. C. L., 246.

So in another case, where the rent was payable quarterly, a dispute having arisen between the landlord and tenant, the former said to the latter, before the expiration of the quar-

Lockwood and others *v.* Lockwood and others.

ter, that he might leave the premises, which he accordingly did.   The landlord afterward brought a suit, to recover rent for that portion of the quarter, during which the premises had been occupied by the defendant, and it was holden, that he was not entitled to recover.   Bailey, J., said : " The parties having entered into an express contract, by which the rent was to be paid quarterly, I think the law will not imply a contract to pay rent, for any period less than a quarter."   *Grimman* v. *Legge*, 15 E. C. L., 229.   Even if the defendants were not liable for the whole year's rent, at the stipulated price, justice requires, that they should make a fair and reasonable compensation to the plaintiffs, for the use of their property, in the manner· they held it, and that compensation might be much greater than a portion of the rent corresponding with the time the building was occupied. A man might much rather let a house or store to a tenant who would occupy it for a year, than to another, upon the same terms, who would abandon it, at his pleasure, leaving it to stand empty during the residue of the year, and at a time when no other tenant could be found to occupy it, upon any terms.

But, however this may be, the rule seems now to be perfectly well settled in England, that a tenant from year to year, can not, without the consent of his landlord, abandon the possession of the demised premises, at any time he pleases, during a year, and thereby exonerate himself from the payment of the rent, during the residue of the year.   Thus, in an action for the use and occupation of two upper floors, in a warehouse, it appeared, that the defendants had occupied them at a specified rent, payable quarterly, from August, 1830, to November, 1834, when they were accidentally consumed by fire, and the defendants ceased to occupy them ; they were afterward repaired by the plaintiff, and leased to another tenant, with the consent of the defendants.   Two questions were made ; the first was, whether the defendants were liable for

the rent, from November, 1834, when the fire occurred, to March, 1836, when the premises were leased to another, by the plaintiff.

Tindal, C. J., in delivering the opinion of the court, said : " If there had been an agreement in writing between the parties, for a term of years, no question could have been made, but that the term of years still continued : and a tenancy from year to year, is, as to its legal character and consequences, the same as a term for years. We think, therefore, the defendants continued tenants of the plaintiff, until the tenancy was put an end to, by the plaintiff's letting the premises to another tenant." And, in relation to the other question, he held that the action was well brought, and said that " the cases referred to in the argument, in which the tenant had been allowed to withdraw himself from the tenancy, and refuse payment of rent, would be found to be cases, where there had been either error, or fraudulent misdescription of the premises, which were the subject of the letting, or where the premises had been found to be uninhabitable, by the wrongful act, or default, of the landlord himself." *Izon v. Gorton*, 35 E. C. L., 198. 1 Sw. Dig., 91.

It is true, that, in the case last cited, the judge, in giving his opinion, that the action would lie, laid much stress upon the word *holden*, in the English statute. But we apprehend, that our action of *assumpsit*, for the use and occupation of real estate, is as broad and comprehensive as the same action in England. We see no reason why it should not be. It is founded upon the liberal principles of our common law, unrestricted by any limited expressions of a statute. It will lie in all cases, where there has been an actual occupancy, by the tenant, of lands, by permission of the owner, under a parol contract, express or implied, to pay rent, although the amount to be paid for such occupancy may be greater or less, according to the circumstances under which it was had. And, in another case, where the executors of a lease, for a term of years, had underlet, and were unable to get the tenant out, at the expiration of the

Lockwood and others *v*. Lockwood and others.

term, it was holden, that they were liable only for the rent, during the time the landlord was kept out of possession. But, Littledale, J., remarked, that "if the original tenancy had been from year to year, they would have been liable for a whole year's rent." *Ibbs* v. *Richardson*, 9 A. &. E., 849, (36 E. C. L., 301.) So in *Penero* v. *Judson*, Gaselee, J., said, "Parties have repeatedly been held liable, in actions for use and occupation, although there has not been an actual occupation, for the whole term, in respect of which the actions were brought. 6 Bing., 206. (19 E. C. L., 56.)

The same doctrine has been recognized by our own courts. And in an action of *assumpsit* for the use and occupation of a store, it was holden, that, if a tenant, after the expiration of a lease for a year, holds over, the law considers him responsible, as hiring for another year, upon the same terms as before. And if, during the continuance of a tenancy, the tenant abandons the possession of the premises, he is as much liable for the rent, as though he had continued his occupancy. *Bacon* v. *Brown*, 9 Conn. R., 334.

It is, in this case, expressly found by the auditor, that the defendants were tenants from year to year. And if we were called upon to review that finding, we should come to the same result, from the other facts embraced in the report. For the authorities show, that, if a tenant enter into possession of real estate, as tenant of the owner, under an agreement, invalid by reason of the statute of frauds, or other cause, and continue in such possession, paying rent for the same, at the end of each year, and the rent is received and accepted, as such, by the owner, the tenant becomes a tenant from year to year, and he may be considered as holding, according to the terms of that agreement, and it may be resorted to, for the purpose of calculating the amount of rent. *Berry* v. *Lindley*, 42 E. C. L., 263. *Mann* v. *Lovejoy*, 21 *id.*, 454. *DeMedina* v. *Polson*, 3 *id.*, 21. *Hamerton* v. *Stead*, 10 *id.*, 159. *Clayton* v. *Blakey*, 8 T. R., 3. *Weaver*

v. *Belcher*, 3 Esp. R., 448. *Martin* v. *Watts*, 2 *id.*, 501. Admitting, therefore, all the evidence in the case, the mere fact, that the defendants abandoned the occupancy of the store, before the expiration of the year, will not exonerate them from the payment of the rent, for the residue of the year. Are they excused, by reason of the want of repairs on the store, or the injuries occasioned by the fire? It is found, that there was no agreement, on the part of the plaintiffs, to keep the building in repair, and, that the condition of it, when the defendants left, was not materially different from what it was, at the commencement of the year, with the exception of the ordinary decay, and the damage at the time of the fire. If, therefore, the defendants had intended to leave the store, because it was not in sufficient repair, they should have done so, at the commencement of the year. And then as to the fire, it is clear, from the English authorities, that they are not exonerated on that account. *Baker* v. *Holtpzaffell*, 4 Taun., 45.

Whether any different rule prevails in this state, we do not deem it necessary to enquire, as the injuries occasioned by the fire, were too trifling to justify the defendants, in abandoning the possession on that account, especially as they made no demand of the plaintiffs, for the repair of the store.

We are, therefore, of opinion, that the plaintiffs are entitled to judgment in their favor, and so advise the superior court.

In this opinion, the other judges concurred.

Judgment for the plaintiffs.