THE CHICAGO & PACIFIC RAILROAD COMPANY

*v.*

SOLOMON STEIN *et al.*

| 75 | 41 |
|---|---|
| 123 | 444 |
| 75 | 41 |
| 131 | 303 |
| 75 | 41 |
| 135 | 560 |
| 75 | 41 |
| 37a | 282 |
| 75 | 41 |
| 150 | 375 |
| 75 | 41 |
| 56a | 230 |
| 75 | 41 |
| 200 | 1  21 |
| 75 | 41 |
| 211 | ²634 |
| 211 | ³640 |
| 75 | 41 |
| 114a | ³227 |

1. AMENDMENT — *as cause for continuance.* In an action on the case to recover damages to the plaintiff's property occasioned by the erection and maintenance of a bridge, its piers and protections, by a railroad company, the court permitted the plaintiff, after the evidence was closed and the ar-

gument commenced, to amend his declaration by adding a count in trespass, and refused a motion of defendant for a continuance on that ground, there being no affidavit in support of the last motion : *Held*, that the amendment was properly allowed, and that the motion for a continuance was properly overruled for the want of an affidavit as required by the statute in such a case.

2. Riparian proprietors — *State cannot grant away rights of; without compensation.* As the title of one owning land bounded upon a stream, not navigable at the common law, extends to the center of the stream, and as the State cannot take or damage such owner's property so situated without compensation, it follows that the State cannot grant a charter to a railway company to do the same thing. Therefore, if such a company, under its charter, erects a bridge across such a stream, and the property of another bounded by the stream is either taken or damaged thereby, a right of action exists in his favor, but such party can only recover for damages which are special to his property and not for such as are incidental to and shared by the public at large.

3. Damages — *decrease in value of property by erection of bridge near to.* Where the erection of a railroad bridge across a river in a city causes a permanent injury or depreciation in the value of a lot in the immediate vicinity which is used for dock purposes, such injury is a proper element of damages in a suit by the owner against the company, and it is proper to allow the lot-owner to show such damage by proving the value of his property before the erection of the bridge and its value after, or in other words, to prove how much less the property would sell for in consequence of the building of the bridge.

Appeal from the Circuit Court of Cook county; the Hon. Henry Booth, Judge, presiding.

This was an action on the case, brought by Solomon Stein and Morris M. Hirsh, partners, etc., against the Chicago & Pacific Railroad Company. The material facts are stated in the opinion of the Court.

Messrs. Sawin & Wells, for the appellant.

Messrs. Wood & Loomis, for the appellees.

Mr. Justice Craig delivered the opinion of the Court:

This was an action brought by appellees, in the circuit court of Cook county, against the Chicago & Pacific Railroad Com-

pany to recover damages claimed to have been sustained by reason of the construction and maintenance of a bridge, its piers and protections, by appellant, across the north branch of the Chicago river.

A trial of the cause was had before a jury, which resulted in a verdict and judgment against the railroad company for $2,692.51.

The declaration originally contained two counts in case. After the evidence had been introduced and the cause in part argued before the jury, appellees asked and obtained leave to file an amended count to the declaration. A count in trespass was prepared and filed ; appellant entered a motion for a continuance, which the court overruled. The decision of the court in allowing the amendment and denying a continuance is the first question presented by appellant for consideration.

By the 23d section of the act in regard to practice in courts of record (Laws of 1871-2, p. 342), it is provided that in a civil suit, at any time before final judgment, amendments may be allowed on such terms as are just and reasonable, introducing new parties, changing the form of action, and in any matter of either form or substance, in any process, pleading or proceeding, which may enable the plaintiff to sustain the action for the claim for which it was intended to be brought, or the defendant to make a legal defense.

By sec. 25 of the same act it is declared that no amendment shall be a cause for continuance unless the party affected thereby, or his agent or attorney, shall make affidavit that in consequence of the amendment he is unable to proceed with the trial at that term, and that he believes if the cause is continued he will be able to make such preparation.

Under this statute it was proper for the court to allow the amendment to the declaration, and as appellant failed to file an affidavit, as required by the act, for a continuance, the motion entered to continue the cause was properly overruled.

Appellees' property, claimed to have been damaged by the erection of the bridge, lies fronting upon the river opposite

where the bridge was built, and it is insisted by appellant, as it is averred in two counts of the declaration, that the river is a public, navigable stream, and as the bridge was built under the power conferred on the railroad company by the State, with permission from the city of Chicago, the municipality within which the river runs, any consequential damage resulting from the erection of the bridge must be regarded as *damnum absque injuria.* In the amended count of the declaration it is not averred that the river is a public, navigable stream, and the navigable qualities of the river were clearly proven by the evidence introduced upon the trial, from which there can be no pretense that the north branch of the Chicago river will fall within the common law definition of a navigable stream.

The authorities therefore cited by the attorneys for appellant upon this branch of the case, while they might be conclusive upon the right of recovery of a riparian proprietor on a river navigable at common law, have no application to the case at bar.

In case of *The People* v. *The City of St. Louis,* 5 Gilm. 351, it was held that while the State possessed the power to change the current of the Mississippi river, or even stop up some of its confessedly navigable channels when necessary for the welfare of the State, yet, if in doing this, private property should be damaged, compensation would first have to be made for that.

In the case of *Middleton* v. *Pritchard,* 3 Scam. 510, it was held that the owner of land bounded by a stream not navigable in the technical sense of the term, held the land to the center of the thread of the stream, and that the water and the soil under it were exclusively that of the riparian owner to that point.

In *Canal Trustees* v. *Haven,* 11 Ill. 554, this court held that, by the common law, a grant of land bordering upon a highway or river, carried the exclusive right and title in the highway or river to the center thereof, subject to the right of passage in the public, unless the terms of the grant clearly indicated an intention on the part of the grantor to confine the grantee to the edge or margin.

In *City of Chicago* v. *Laflin*, 49 Ill. 172, it was said, "The rule is well settled that the title of a riparian owner extends to the middle thread of the stream, if it is called for as a boundary, and if he is the owner, subject, it is true, to the public easement."

From these authorities it is clear that appellees were the owners of the lots fronting upon the river to the center of the current, subject only to the right of the public to the free and undisturbed navigation of the river.

The State could not take or damage appellees' property, fronting upon or in the bed of the river, without first making compensation therefor, nor could it by granting a charter to appellant authorize appellant to do what it could not in its sovereign capacity do itself.

If, therefore, appellees' property was taken or damaged by the erection of the bridge, a right of action exists in their favor.

The damages for which they may however recover, must be special to their own property, and not such as are incident to, and shared by, the public at large.

The construction of any great thoroughfare may discommode those who may reside in the vicinity of the route where the improvement is made, and to some extent damage or lessen in value property, yet if damages could be recovered for inconveniences which are shared by all alike, it would retard the improvement and development of the country to such an extent that it would be difficult to construct a railroad or build a canal.

The claim made by appellees in this case is, that by the erection of the bridge and the bridge protection in the river, boats and vessels could not pass and repass in the river, and land at appellees' dock with that facility that they otherwise could, were it not for the erection of the bridge.

The proof shows that the nearest part of the bridge protection to the dock is a distance of thirty-six to forty feet; it also appears that when the bridge was built, boats could not land upon appellees' premises owing to shallow water; that since the

erection of the bridge, appellees have dredged in front of their premises and built a dock; that the premises fronting the river were filled up and the dock line extended into the river twenty feet, so that at the time the bridge protection was built it was a distance of about sixty feet from the front of appellees' premises at the water's edge.

We have given the evidence in this record, bearing upon the question of damages sustained by appellees, a careful consideration, and we can find no testimony outside of bare conjecture upon which to base the verdict of the jury.

One of the appellees testified, he considered the damages $4,500. When asked to give the items upon which he based the amount, he says $2,000 of it was the cost of dredging and docking; the remaining $2,500 is predicated upon the belief of the witness that he might have realized that sum from rents during the fall season.

As to the $2,000 expended in dredging and docking, which it is claimed was expended in consequence of the obstruction of the river by the company, the proof is clear that boats could not land upon the premises before the bridge was built, in consequence of shallow water; when it became necessary to remove goods from a boat, upon the premises, the boat had to be stopped in the channel of the river, and wooden horses placed in the water from the shore to the boat, plank placed upon them, and the goods carried over the plank. This was the only manner in which goods could be removed from the boats to the shore prior to the erection of the railroad bridge.

Since the dredging and docking, boats can and do land upon the dock of the premises, and remove goods directly upon the shore. Capt. Martin testified that he had been up and down the north branch of the Chicago river from four to eight times a day, with his steam propeller, during 1871, 1872 and 1873; that boats could be loaded and unloaded in the river opposite the premises after the erection of the bridge as well as before. He also testified that the property could not have been made available for dock purposes at any time without the dredging,

with or without the bridge; that no damage has resulted from the building of the bridge; that there is no trouble in getting a vessel in and out between the bridge and the dock; that since the dock was completed he has landed there with his boat.

A number of other witnesses were sworn who had large experience in the navigation of the river, and they agree in saying no damage has resulted from the erection of the bridge.

As to the $2,000 spent in improvements by appellees, it is apparent their property was not available for unloading boats until that money was spent in the improvement.

And if the property was in demand for rent, when all the evidence is considered, we fail to see in what manner the erection of the bridge deprived appellees of large rents which they otherwise would have received.

The verdict in this case is so clearly against the weight of evidence that it was the duty of the court to have set it aside and awarded a new trial.

The appellees here assigned a cross error, that the court erred in refusing to permit them to prove the damages suffered in the deterioration in value of the premises occasioned by the erection of the bridge.

If the erection of the bridge was an injury or damage to the premises, permanent in its character, and not such as was shared by the public at large, then it was proper for the appellees to establish the fact that the value of the premises had decreased by the erection of the bridge.

We see no reason why it would not have been proper for appellees to have proved the value of their property before the erection of the bridge, and the value after the building of the bridge.

In other words, it would have been proper to have shown how much less the property would sell for in consequence of the erection of the bridge than if it had not been built. *Ottawa Gas Light Co.* v. *Graham*, 28 Ill. 73; *Ill. Cent. R. R. Co.* v. *Grabill*, 50 ib. 242.

For the errors indicated, the judgment will be reversed and the cause remanded.

*Judgment reversed.*