The Chicago and Alton Railroad Company

*v.*

Sarah Maher.

1. Assignment—*what may not be assigned so as to pass legal title.* A cause of action on a verbal contract, or for an injury to the person or property of another, is not, under our law, assignable so as to pass the right of action to the assignee.

2. A right of action for a trespass to land, or for a wrongful act resulting in injury to land, can not be transferred to another by an instrument in writing for that purpose, or by conveying the land. Such a right of action is not appurtenant to the land, and does not, like a covenant for title, inhere to or run with the land. ·It is a personal right, and is not transferable.

3. Where a railroad company placed a protection to a draw-bridge in a river, whereby the approach of vessels to a dock was obstructed, and the value of the lot upon which the dock was placed was permanently depreciated, and, afterwards, the owner of the lot and dock sold the same to his wife, and conveyed the legal title to her, it was *held*, that she could not maintain any action against the company for placing the obstruction in front of the dock.

4. Former recovery—*when a bar to suit for continuing injury.* Where an injury to real estate is permanent in its nature, and not of a temporary character, the owner may recover not only for the present, but also for future damages, as, for the depreciation in the value of the property caused by the erection of an obstruction or nuisance, and such a recovery will be a bar to any other suits for damages growing out of the continuance of the cause of the injury.

5. Action—*when for a continuance of an injury.* Where an injury is caused to real estate by a cause of a permanent character, after which the owner of the property so injured conveys the same to another, his grantee can not maintain an action for the continuance of the cause of the injury, although the former owner may not have brought any suit for the original injury.

APPEAL from the Appellate Court of the First District; the Hon. THEODORE D. MURPHY, presiding Justice, and the Hon. GEO. W. PLEASANTS and Hon. J. M. BAILEY, Justices.

This was an action of trespass, brought by the appellee against the appellant, for an injury to a certain lot on the South Branch of the Chicago river. The material facts are stated in the opinion of the court.

Mr. GEO. W. SMITH, and Mr. R. A. CHILDS, for the appellant.

Mr. JESSE COX, Jr., and Mr. SIDNEY SMITH, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee sued to recover damages for injuries claimed to have been sustained to her land by a pier erected by appellant for a bridge of the company.

The property out of which this litigation arises originally belonged to the trustees of the Illinois and Michigan Canal. One Michael Scanlan purchased of them block 16, of their subdivision of the quarter section. He having died before the block was conveyed, the trustees deeded the property to his heirs, and they, on the 6th day of February, 1868, conveyed to Hugh Maher the portion which lies east of the South Branch of the Chicago river, fronting on the East Branch of the South Branch, except all of that part which lies north of the track of the Chicago, Alton and St. Louis Railroad Company. Maher, subsequently, on the 29th of June, 1872, sold the property to his wife, and, to vest the title in her, conveyed to James Roberts, and he deeded it to Mrs. Maher.

When Maher purchased of the Scanlans, he entered into possession and constructed a brick yard on the land, and dredged, deepened and widened the river in front of it, for dock purposes. He had completed the dock before he sold to his wife, and she has held possession, through tenants, since

her purchase. After Maher had completed his dock, the railroad company, in 1871, replaced a bridge over the river by a new one, with a swing, to admit of the passage of vessels through the structure. This swing was placed on a pier, in the center of the river. The length of the swing was 150 feet, and spanned the width of the river. The protection stands up and down the river, the length of the swing, and was made by driving piles, capping them with timber, and planking the sides. Before this last bridge was built, the swing of the old bridge, which this replaced, rested on a clump of piles driven in the river, so the ends of the draw would rest on them when it was opened to permit vessels to pass.

It is claimed that this structure is of great injury to this property for dock purposes, and that the amount of the verdict ($4000) is not excessive, but, on the contrary, does not compensate appellee for the loss. On the other side it is contended, that as this structure is permanent in its nature, and was placed there whilst Maher was the owner of the land in fee, the action accrued to him, and not to his wife, and that she can not sue and recover for the injury.

It is, however, contended, that the continuance of the structure is an injury to the property, since the wife became the purchaser, and for which she may recover. On the other hand it is urged, that, the injury being permanent and depreciating the price of the land, all damages for past and future injury to the property could have been sued for and recovered by Maher, and that such a recovery would have been a bar to all actions growing out of the trespass by the company in creating the obstruction to the dock of appellee,—in other words, the trespass was upon Maher's land, the damage, if any, was sustained by him, and he could not, nor did he, assign the cause of action to his wife by conveying her the property, or otherwise; and if she was entitled to the benefit of a recovery, the suit should have been brought in his name, for her use.

That Maher was the owner when this last structure was made is conceded, and all will admit that, being the owner in

fee, he could have maintained an action for the recovery of damages for such injury as he sustained. His right of action was complete. It was a chose in action, fully and undeniably vested in him. At common law it could not be assigned or sold, so as to vest the legal title to the claim, or a right to sue, in another person. Even promissory notes, until authorized, (by act of Parliament in England, or by act of the General Assembly in the States of the Union,) could not be assigned so as to transfer the right of action from the payee to another. It was against the policy of the common law to permit causes of action to be sold and transferred. Bills of exchange formed an exception to the rule, as their transfer was governed by the commercial law; nor have causes of action, other than promissory notes or instruments for the payment of money or articles of property, or for money payable in property, been made assignable under our *statute*. A cause of action on a verbal contract, or for an injury to the person or property of another, is not, under our law, assignable, so as to pass the right of action to the assignee. . This is a familiar doctrine of our law, and requires the citation of no authorities for its support.

It is true, there are some exceptions to the rule. The conveyance of land transfers or assigns leases on the land, as a general rule; and when the tenant recognized the purchaser of the land as landlord, the assignment of the lease, with all its covenants, became complete. Again, when the owner conveyed the land with covenants for title, all previous covenants of warranty, for quiet enjoyment, etc., made by previous grantors, passed to the grantee, and, on a failure of title, he might sue on such covenants, and recover in his own name. But this exception grew out of the feudal tenures, and is peculiar to the law of real estate. We are not aware that any court has ever held that a mere trespass to land, giving a right of action, can be assigned by an instrument in writing for the purpose, or by conveying the land. Such a right of action is not appurtenant to the land, nor does it, like a covenant for

title, inhere to or run with the land.   It, when accrued, is a personal right, and is not transferable.

It, then, follows, that appellee did not acquire the right of action which accrued to her husband by the construction of this protection to the bridge.   The action for that wrong was vested in him, and she can recover nothing on account of the placing of the obstruction in front of the dock.   1 Chit. Pl. 77.

But the question is presented, whether she may recover for damages she has sustained by the continuance of the obstruction since she purchased.

The question then recurs, whether this was the character of injury for which a recovery would lie, in bar of all future actions growing out of the erection of this structure.   That it is permanent in its character seems to be apparent.   It is more than probable that it will continue perpetually, by being renewed as necessity may require.   If so, then it could be determined, with a reasonable degree of certainty, how much it depreciated the value of the land as a permanent structure,— how much less it was worth after the erection of the structure than before.

The case of *Ottawa Gas Light and Coke Co.* v. *Graham,* 28 Ill. 73, was a case where a gas company, by the manufacture of gas, coke, etc., in the vicinity of the premises of appellee, polluted and injured the water of his well, and the suit was to recover damages therefor.   In considering the means of measuring the damages, the court said: "Another means of arriving at the damages would be, to ascertain the depreciation of the value of the property by reason of the erection of the gas works,—to ascertain how much less the property would sell for in consequence of the erection than if it had not been made; and in ascertaining that fact, all the circumstances which might show a depreciation in value should be considered.   If the property would sell for the same amount, independent of a rise in similar property, then there would be no

loss; but if it would not, then the difference would be the damages sustained."

Again, in the case of *Illinois Central Railroad Co.* v. *Grabill*, 50 Ill. 241, which was an action on the case to recover damages for a nuisance in erecting and maintaining cattle pens near the premises of appellee, it was held, that in estimating the damages resulting from the nuisance, it is proper to consider the depreciation in the value of the plaintiff's property occasioned by the erection and maintenance of the nuisance, and also the injury and annoyance to the plaintiff whilst occupying the premises; and if a recovery in such a case should be based upon the depreciation in value of plaintiff's property, such a recovery would be a bar to any further prosecution for the injury resulting from the erection and continuance of the nuisance. But if a recovery be had for the nuisance, merely, and for rendering the air unwholesome, then a similar recovery may be had at any succeeding term of the court whilst the nuisance may be continued.

In the case of *Chicago and Pacific Railroad Co.* v. *Stein*, 75 Ill. 41, it was held, that where the erection of a railroad bridge across a river in a city, causes a depreciation in the value of a lot in the immediate vicinity which is used for dock purposes, such injury is a proper element of damages in an action by the owner against the company, and it is proper to allow the plaintiff to show such damage by proving the value of the lot before the erection of the bridge, and what it is worth afterwards,—to show how much less the property would sell for in consequence of the erection of the bridge.

This last case, in its controlling facts, is similar to the case at bar. Here, as there, the protection to the bridge depreciated the value of the property for dock purposes. It was as permanent in its character in this case as in that, and this case can not be distinguished from that.

These authorities establish the doctrine that Maher might have sued for and recovered all the damages which were sustained by the property from the erection, whether at the time

or in the future; that he could have sued and recovered for the depreciation in the value of the property caused by the erection of this protection. This being true, the right of action was in him for a recovery of all damages that were or might be caused by the structure, and as the right has not nor can be transferred to the appellee, she has shown no right of recovery.

The court below erred in rendering judgment on the verdict, and it must be reversed.

*Judgment reversed.*