The Wabash, St. Louis and Pacific Railway Company et al.

v.

Isaac McDougall et al.

*Filed at Springfield October 6, 1886.*

1. Eminent domain—*damages—by whom recoverable—as, in case of a subsequent sale and conveyance of the premises.* The damages to land not taken for a right of way by a railway company, caused by the construction of a railway over adjoining lands of the same owner, both present and future, become fixed and determined when the railroad is constructed, and the owner of the lands at that time is the only person entitled to have damages assessed in his favor. The purchaser from him can not recover, either in an action at law or in a proceeding to condemn, for any damages caused by the proper construction and operation of the railroad.

2. Damages for the taking and injury to land belong to the owner at the time of the injury, and do not pass to a subsequent vendee. The owner alone can take advantage of a claim for damages, and if he does not claim, his subsequent vendee can not. The doctrine here announced is not in conflict with the ruling in the case of *Chicago and Iowa Railroad Co.* v. *Hopkins,* 90 Ill. 316.

3. Same—*rights of purchaser in respect to subsequently accruing damages.* While the purchaser of land can not recover damages for an injury thereto by the construction of a railroad over the same, or a part thereof, before his purchase, yet if the railway company, after his purchase, adopts a new feature in the construction and operation of its road in the future, as, by making an opening in an embankment for the passage of water and constructing a bridge over the opening, such purchaser will, in a proceeding to condemn, be entitled to just compensation for any damages growing out of the change or alteration in the nature of the work.

Writ of Error to the Circuit Court of Menard county; the Hon. Cyrus Epler, Judge, presiding.

The plaintiffs in error instituted this proceeding in the circuit court of Menard county, to condemn a right of way, one hundred feet wide, for their railroad, over and across lands of McDougall and Hamilton, described as part of the north-west quarter of section 11, township 19 north, range 8 west, and part of the north fractional half of section 10, same township.

The petition represents that the plaintiffs were the owners of and operating a railroad between the city of Springfield and Havana, that was formerly owned by the Springfield and Northwestern Railroad Company; that the embankment of the railroad was already constructed and placed on the lands above described, and alleges that McDougall and Hamilton are the owners of the land, and that Fisk is interested as mortgagee.

The defendants in error filed their cross-petition, alleging that McDougall and Hamilton were also the owners of the south-west quarter of said section 10, containing 132 acres; the north-east quarter of the south-east quarter of said section 10, containing 40 acres; the west half of the south-east quarter of said section 10, containing 80 acres. The 40-acre tract lies one-fourth of a mile, the 80-acre tract one-half mile, and the 132-acre tract three-fourths of a mile from the railroad. It is alleged in the cross-petition that the three tracts therein described, and the two tracts described in plaintiffs' petition, comprise one compact body of land, and constitute a single farm of $548\frac{51}{100}$ acres; that the strip of land sought to be condemned contains 10 acres, and runs diagonally through the farm in a south-easterly direction, dividing and separating about 160 acres from the rest of the farm, thereby greatly injuring all portions of the farm not sought to be taken; that by the construction of the railroad, and the embankments thereof, the natural and accustomed flow of the overflowed waters of Sangamon river and Lake Run have been obstructed in their natural course, and thereby a portion of said land has been submerged and damaged; and that in divers other ways set out, damage is caused to the land from such overflowed water by reason of the railroad and such embankments, and praying that these damages may be assessed, and paid to defendants.

Previous to the commencement of the trial, the parties entered into a stipulation in writing, as follows:

"It is stipulated in the above entitled cause, that the rail-way over the tracts of land sought to be condemned in this proceeding, was constructed by the Springfield and Northwestern Railroad Company; that at the time the land described in plaintiffs' petition was appropriated by said Springfield and Northwestern Railroad Company, the title to said land was in John T. Bennett; that subsequent to the building of said road, to-wit, in 1872, McDougall and Hamilton, defendants herein, acquired a fee simple title to said lands, and are now, and ever since have been, the owners of said land in fee simple, and also at said time acquired title to all the land described in the cross-petition herein, and still have title thereto."

The evidence shows that the land sought to be taken is about seven acres in quantity, and of the value of $10 to $20 an acre; that the whole $548\frac{51}{100}$ acres is subject to annual overflow, and was so subject to overflow before the railroad was constructed. When the defendants offered evidence to prove the damages claimed in their cross-petition, the plaintiffs objected thereto, upon the ground that defendants did not own the land at the time the railroad was constructed, and that the damages sought to be proved, if any, accrued to Bennett, who owned the land at the time the road was constructed, and not to defendants; but the court overruled the objection, and permitted defendants to prove the difference in the value of the land before and since the construction of the road, and also damages sustained by them by reason of a washout in the railroad embankment, and other damages sustained by the land by the construction of the railroad upon it.

It appears from the testimony of Hamilton, one of the owners of the land, that after he and McDougall got it, they agreed with Thompson, Grigg & Co., who at that time operated the railroad, to give the right of way across the land on condition that they be permitted to join their levee to the em-

bankment of the railroad, and that the latter be kept intact, without any opening; that in pursuance of this agreement, McDougall and Hamilton built a levee around that portion of the land lying below the railroad, and attached the end of it to the embankment, thereby, with the levee and railroad embankment, forming a bank of earth around $388\frac{1}{2}$ acres of the land, and protecting it from overflow, but McDougall and Hamilton did not convey the right of way. Also, that the embankment of the railroad was maintained, without any openings, until 1875, when a portion of it was washed away, and that McDougall and Hamilton, under an agreement with Col. Williams, who then had the road, filled up the break, and continued to use the embankment as a part of their levee until 1882, two years after the Wabash company purchased the road, when another break was made in the embankment by the high water, destroying the usefulness of the levee, when McDougall and Hamilton proposed to the Wabash company to carry out with it the agreement made with Thompson, Grigg & Co., provided the former would repair the break in the embankment and maintain the latter, but the Wabash company, instead of filling the break with earth, put in piling and a bridge, leaving an opening in the embankment for the water to pass through. There was evidence that a proper construction and maintenance of the road-bed required the break in the embankment to be filled; that if the embankment was properly constructed and maintained, the railroad would not be a damage to the $548\frac{51}{100}$ acres.

The court refused to instruct the jury, at the instance of plaintiffs in error, that McDougall and Hamilton, not being the owners of the land described in the cross-petition at the time of the construction of the railroad, were not entitled to have the damages therein claimed, assessed in this proceeding. The court also refused to instruct the jury that the only damages to the land described in the cross-petition, which the owners were entitled to recover, were such as resulted

from the proper construction and maintenance of the railroad, and if by the proper construction and maintenance of the road the owners would sustain no damage, then they could not recover damages claimed in their cross-petition in this proceeding, although the railroad company, since the construction of the road, negligently and wrongfully suffered and permitted the embankment to be washed away, and to remain out of repair, whereby the land was depreciated in value.

The jury assessed the just compensation to be paid by the plaintiffs to the defendants, at the sum of $4134.50. Judgment was entered upon the verdict, after overruling a motion for a new trial, and the plaintiffs bring this writ of error.

Mr. George B. Burnett, for the plaintiffs in error:

McDougall and Hamilton are not entitled to damages occasioned by the overflow of the land described in this crosspetition, because they were not the owners of the land at the time the railroad was constructed. Whatever the land was depreciated in value, by reason of the construction of the embankment, was a damage which accrued to their grantor, and not to them. *Railroad Co.* v. *Allen,* 39 Ill. 205; *Railway Co.* v. *Hunter,* 50 id. 325; *Saw* v. *Morgan,* 72 id. 155; *Railroad Co.* v. *Maher,* 91 id. 312; *Railway Co.* v. *McLaughlin,* 77 id. 275; *Dupuis* v. *Railroad Co.* 115 id. 97; *Railroad Co.* v. *Hatfield,* 5 Dutch. 206; *Commonwealth* v. *Sheppard,* 3 Pa. 509; *McFadden* v. *Johnson,* 72 Pa. St. 335; *Tenbroke* v. *Johke,* 77 id. 392; *Verder* v. *Railroad Co.* 15 Shands, (S. C.) 476; *Cotterill* v. *Myers,* 12 Me. 222; Mills on Eminent Domain, sec. 66; Pierce on Railroad Law, 185; 2 Wood on Railway Law, 864, 865.

The damages to be assessed in a proceeding to condemn a right of way for a railroad, are only such as arise from a proper construction of the road. The circuit court therefore erred in permitting defendants in error to recover in this proceeding, damages resulting from the improper or negligent

maintenance of the road-bed. *King* v. *Railroad Co.* 34 Iowa, 538; *Nelson* v. *Railroad Co.* 58 Wis. 516; *Lyon* v. *Railroad Co.* 42 id. 538; *McCormick* v. *Railroad Co.* 57 Mo. 433; *Railroad Co.* v. *McKinley*, 33 Ind. 274; *Railroad Co.* v. *Daniels*, 20 Gratt. 344; *Cotterill* v. *Myers*, 12 Me. 222; *Sargent* v. *Machias*, 65 id. 591; *McLendon* v. *Railroad Co.* 54 Ga. 293; *Pomeroy* v. *Railroad Co.* 25 Wis. 641; *Rand* v. *Townsend*, 26 Vt. 670; Mills on Eminent Domain, sec. 220.

Mr. N. W. Branson, and Mr. Edward Laning, for the defendants in error:

This is a proceeding instituted by plaintiffs in error, under the Eminent Domain act, to condemn a right of way over lands owned by defendants in error, McDougall and Hamilton. Defendants in error are entitled to the just compensation prescribed by the constitution and the law, notwithstanding the lands now sought to be condemned were actually entered upon and appropriated by the railroad company while the title to the same was in defendants' grantor. By the averments of their petition in this case, and by virtue of the mere fact of filing their petition, plaintiffs confess that they have no right of way, either by condemnation or otherwise, over the lands in question, which had been previously taken by them. Not having acquired a right of way, either by condemnation or otherwise, the taking and retaining the land used is a continuing trespass, and on sale and conveyance, the whole land, including the so-called right of way, passed to the defendants in error, McDougall and Hamilton, and they are entitled to compensation for the land taken, and damages for any injury to the part not so taken, in a proceeding to condemn. *Railroad Co.* v. *Hopkins*, 90 Ill. 316; *Railroad Co.* v. *Pfeuffer*, 56 Texas, 66; *Carli* v. *Railroad Co.* 16 Minn. 260; *Schermeely* v. *Railroad Co.* id. 506; *Caldwell* v. *Bank*, 20 Ind. 294; *Cunan* v. *Shattuck*, 24 Cal. 427.

Mr. Justice Sheldon delivered the opinion of the Court:

As the lands described in the petition and cross-petition were owned by one Bennett at the time the railroad in question was constructed, and the defendants in error purchased them from Bennett subsequent to the building of the road, it is insisted that whatever damage was done to the lands described in the cross-petition by reason of grading the road-bed and constructing the railroad, was to Bennett, and that, in the absence of all evidence on that subject, it may be presumed the railroad company adjusted the damages with him; that if Bennett did not insist upon the payment of these damages, defendants in error can not.

In *Dupuis et al.* v. *Railroad Co.* 115 Ill. 97, an instruction which declared the law to be that the cash market value of the land taken is the proper measure of damages for land taken by a railroad, and as to lands damaged, the measure of damages is the difference between the value of the land before and after the construction of the road, was held to be correct. And in *Page* v. *Chicago, Milwaukee and St. Paul Railway Co.* 70 Ill. 328, such measure of damages was expressed to be the difference between what the whole land would have sold for unaffected by the railroad, and what it would have sold for as affected by it, and the court there say, the damages must be for an actual diminution of the market value of the land. This being the measure of damages to land not taken, it would seem to follow that the damages thereto became fixed and determined when the railroad was constructed. The railroad was then upon the land, a permanent structure. Its damage to the land for all time was then assessable, and would have been assessed in a condemnation proceeding. The damage was then done to the land, and sustained in the depreciated value of it by reason of the railroad, and the injury was suffered by Bennett, the then owner of the lands. When the defendants came to buy

the land of Bennett, they bought with the disadvantage of the railroad upon it, and with the deduction, as must be supposed, of the amount of that disadvantage.    They paid the market value of the land, it must be presumed, as it then was, with the railroad upon it, and not its market value without the railroad upon it.    In addition to such presumption, there is the testimony of Hamilton himself, that at the time they purchased, the land would have been worth, without the railroad upon it, $20 an acre, or at least $15; that they purchased the $548\frac{51}{100}$ acres for $6500, so that if it was worth, at the time they purchased, $20 an acre without the railroad upon it, they paid $4470 less than that value; or, if the land was worth $15 an acre without the railroad upon it, there was paid $1727.50 less than such value.    Defendants have been compensated for the damage of the railroad in the reduced price which they paid for the land because of the railroad being upon it, and to allow their claim for damages in this proceeding, would be giving them pay for the damages a second time, and compensation for an injury which was done to another, viz., Bennett, the former owner of the land, and who sustained the damage from it in the depreciated price which he received for the land because of the railroad.

*Toledo, Wabash and Western Railway Co.* v. *Morgan*, 72 Ill. 155, supports this view.    The court there say: "It is charged the company wrongfully constructed its railroad on the lands of appellee, across the natural drains and outlets, so as to obstruct the same, whereby large bodies of water accumulated, and rendered the lands unfit for cultivation. There is a total want of evidence to support a recovery on either of these counts.    The appellee did not own the lands when the company graded and constructed its road at that point.    Whatever damage was done by reason of the grading of the road-bed, was to his grantor.    In the absence of all evidence on that subject, it may be presumed the company adjusted the damages with him.    If the former owner did

not complain, certainly his grantee can not. He purchased the land with the incumbrance of the railroad embankment upon it. It was open and visible. He could see exactly how the farm was affected by the construction of the railroad." Mr. Mills, in his work on the Law of Eminent Domain, sec. 66, says: "The claim for damages and of title to land may be distinct. Damages for taking and injury to land belong to the owner at the time of the injury, and do not pass to a subsequent vendee. The owner alone can take advantage of a claim for damages, and if he does not claim, his subsequent vendee can not." And see *Chicago and Eastern Illinois Railroad Co.* v. *Loeb, ante,* 203 ; *Kutz* v. *McCune,* 22 Wis. 628 ; *Memmert* v. *McKeen,* 112 Pa. St. 315.

It is answered to the *Morgan case,* that the rule there announced does not apply here, because that was an action on the case. The principle of that decision was, that the owner of land can not recover for damages which accrued to it before he purchased the property, and would seem to apply to any case where such damages were sought to be recovered, whether in a proceeding to condemn or any other form of action.

The case of *Chicago and Iowa Railroad Co.* v. *Hopkins,* 90 Ill. 316, is relied upon by defendants in support of their claim. In that case, land was advertised for sale under a decree of court against the heirs of one Ward, and pending the advertisement of sale under the decree, and a few days before the sale took place, the railroad company entered upon the land and constructed its road over it. Hopkins purchased the land at the sale, and in the subsequent condemnation proceeding he was allowed compensation for the taking of the land by the railroad company. The court there say: "The title of the Ward heirs was unincumbered by any right of way in the company, and their title to the whole land, including the so-called right of way, passed by the judicial sale and deed to Hopkins." The title which Hopkins acquired at the

sale related back and vested in him as of the date of the decree under which he purchased, so that it was his land upon which the railroad company entered and constructed its railroad, and of course it was he who was entitled to the compensation therefor. We do not consider that that case at all overrules or conflicts with the decision in the *Morgan case,* or is at variance with our present decision.

But what has been said is with reference to the railroad as it was then constructed, at the time defendants purchased the land. At that time the embankment of the railroad was solid and continuous over the land, or a portion of it; but since then, and after the plaintiffs came into possession of the road, there occurred a break in the embankment, which, instead of filling up, plaintiffs left as a permanent opening for the passage of water, and put in a bridge. The evidence tends to show that this opening and bridge in the embankment have been adopted by plaintiffs as a permanent feature in the construction and maintenance of their road, and that it is a cause of additional damage to the land. For any increase of damage which results to the land from this alteration in the embankment, we think the defendants are entitled to recover, and that they may do so in this proceeding, and not be put to another action for such damage, as contended for by defendants' counsel, on the ground that a proper construction and maintenance of the embankment required the break in question to be filled up. There was not a mere negligent maintenance of the embankment, but, as the evidence tended to show, an alteration in the method of the permanent construction of the embankment by the adoption of this opening in it. And no matter whether that would be a proper construction of the embankment or not, if that was the plan of construction which the railroad company had adopted, the assessment of damages in a condemnation proceeding should be upon the basis of a road thus constructed. We think it may be treated, here, as if the application were

to have the damages assessed because of the alteration in the embankment, of this opening in it.

It follows that there was error in the court below, in not restricting the inquiry and assessment of damages to the particular damages which resulted from the alteration in the construction of the railroad embankment by the adoption and maintenance of this opening in it.

The judgment is reversed and the cause remanded.

*Judgment reversed.*