# V. T. Mallott, Receiver, et al., v. James S. Johnston.

1. NUISANCES—*Action to Recover Damages for, is a Personal Action.*—An action to recover damages to land by reason of a nuisance is a personal action, and can not be assigned by deeding the land to another.

2. SAME—*A Railroad Bridge and Embankment is Not a Continuing Nuisance.*—A railroad bridge and embankment built and constructed more than thirty years before the injury to the land for which the suit was brought occurred, and never changed, is not a continuing nuisance.

Trespass on the Case, for a nuisance. Error to the Circuit Court of Bond County; the Hon. BENJAMIN R. BURROUGHS, Judge presiding. Heard in this court at the August term, 1902. Reversed and remanded. Opinion filed March 2, 1903.

W. H. DAWDY and T. J. GOLDEN, attorneys for plaintiff in error.

C. E. COOK, attorney for defendant in error.

MR. PRESIDING JUSTICE BIGELOW delivered the opinion of the court.

Defendant in error recovered a judgment against plaintiff in error for $170 damages to his land and crops growing thereon, alleged to have been caused by the erection and maintenance by plaintiff in error, of a bridge across Shoal Creek, in Bond county, and an embankment on the west side of the creek, whereby the lands of defendant in error were flooded with water, after the falling of heavy rains, about the 8th of March, 1900, in consequence of which portions of the soil were washed and carried away and other portions of the land were made and left "in bogs, holes and gullies," so that the land would not properly drain off the waters falling and flowing thereon.

The bridge across Shoal Creek and the embankment along the creek were constructed by the railroad company about the year 1865, and are a part of the railroad, and both are in substantially the same condition as when constructed.

At the time the railroad bridge was built, and the embankment constructed, the land on which they are located was not owned by defendant in error, nor did he become the owner of it until 1873.

When the railroad was built and for many years thereafter, the bottom lands along Shoal Creek north of the railroad bridge for some miles were unsubdued and in their natural state, and were covered by a growth of timber, so that when the heavy rains came and flooded the bottom lands, the soil was undisturbed by the waters flowing over them.

The bridge was built on piles, with large openings between them for the waters to pass through, and it does not appear that so long as the timber remained on the bottom land north of the bridge, that the water was impeded in its flow by the railroad bridge, or by the embankment, or by both; and defendant in error does not claim in his testimony that his land has been injured by a back overflow of water caused by the bridge or by the embankment or by both, but, on the contrary, he testifies:

"My land is injured by the headwater. Backwater does not injure the land. Headwater forms a current and cuts the soil. While the land was in timber it did not damage it any."

It is not claimed by defendant in error, either in his declaration or in his evidence, that the bridge or embankment, or either of them, was not properly constructed, or that any change has been made in either since he became the owner of the land in 1873, when it was all timber. But he testified that the main part of the land has not been cleared more than ten years. "That stump ground, I have had but two crops off of it." He also testified that while the land was in timber the water of the creek did not damage it; that two years before 1900, the stump land was first cultivated; and he further says: "I find that the washing of bottom land depends upon how long it has been cleared. I find that land when the roots begin to come out washes a great deal the worst."

There is no evidence in the record that contravenes this statement but much in support of it.

The pleas filed by plaintiff in error were, not guilty, and the five years' statute of limitations, and the parties stipulated in writing that all pleas and replications that could properly be pleaded were to be considered filed and issues joined thereon.

The bridge and embankment are permanent constructions, and are a part of the body of the railroad, and time has not made them more of a nuisance than when they were first built. If they or either of them were a nui-

sance when first constructed, an action to recover damages therefor accrued to the then owner of the land, and this right of action was personal and could not be assigned by deeding the land to defendant in error, any more than a trespass for cutting and removing timber from the land when owned by the defendant in error's grantor could be assigned to the latter by the deed of the land to him. Whatever permanent injuries may have been done to the land before defendant in error purchased it, he must be held to have taken into consideration when he made the purchase. Chicago & Alton Railroad Co. v. Maher, 91 Ill. 312; Chicago & Eastern Ill. Railroad Co. v. Loeb, 118 Ill. 203.

But it is insisted by counsel for defendant in error that the nuisance is a continuing one, and so the action was properly brought. We are unable to assent to this view of the case. In passing upon this question in the Maher case, *supra*, the court, in determining whether the structure complained of in the Chicago river was permanent, or otherwise, said: "That it is permanent in its character, seems to be apparent. It is more than probable that it will continue perpetually by being renewed as necessity may require." This language is peculiarly applicable to the facts in this case.

The railroad bridge and embankment for the track of the railroad were built and constructed more than thirty years before the injury to the land of defendant in error for which this suit was brought, occurred; and after such a length of time, without change in their location or construction, it would seem to be trifling with language to say that that portion of the railroad is less permanent than any other part of its road-bed and track, which has been in constant use ever since it was constructed.

To elucidate and fully understand the rights of defendant in error as he claims them to be, we know of no better way than to suppose he had become the owner of the land within five years prior to the construction of the bridge and embankment, and within that time he had denuded the land of its timber, and the stumps and roots of the

trees had decayed and rotted away, and the land had been fully subdued by ploughing and cultivating it, and the flood of March, 1900, had fallen on his land and washed away a portion of its soil, thus damaging and materially injuring the land. Could it be said in the light of the testimony of defendant in error, that plaintiffs in error were anywise in fault in causing the injury? If it could, then the testimony of an interested witness against his own interest, must go for naught, and the common knowledge of nearly all, if not the entire mass of reasonably intelligent men, must count as nothing against a conjecture of a fact that has no legitimate evidence to support its existence.

The testimony of defendant in error is clear and candid, that his land was not injured by backwater, but by headwater; and that before it was cleared of the timber growing on it, and brought under cultivation by ploughing, the soil did not wash away, nor was the land injured by floods in time of high waters. The facts thus given and in no way attempted to be controverted, inevitably lead to the conclusion that the injury done to the land of defendant in error, as well as to his crops (if any he had growing thereon) was not caused in whole or in part by any act or omission of duty of plaintiffs in error, or either of them, and the same result produced by the high water, would have been produced if the bridge and embankment had never been constructed.

From any view we are able to take of the case, we are unable to see that defendant in error has any cause of action against plaintiffs in error, or either of them, for damages done to his land, or his crops.

We deem it unnecessary to advert to the instructions given and refused by the court, and as no motion was made by plaintiff in error, either at the close of plaintiff's evidence, or at the close of all the evidence, to take the case from the jury, and as the court erred in not granting defendant's motion for a new trial, for the reason that the verdict of the jury was against the law and the evidence, the judgment of the Circuit Court is reversed, and the cause remanded.