## Joseph A. Melendy et al. v. Chicago, Milwaukee & St. Paul Railway Company et al.

### Gen. No. 4,719.

1. INJURIES TO REAL PROPERTY—*when cause of action arises, when not, where a railroad structure, or the like, is erected or maintained.* If the structure complained of and which causes injury to adjacent property is authorized by law and is carefully and properly constructed and there is no negligence in construction, operation or maintenance, there is no liability if the right to such construction and maintenance has once been obtained and compensated for. If, however, the right to the construction and maintenance of a permanent structure has not been paid for, there is but one right of action and there can be but one recovery for

all damages past and future, and the right of action is in the owner of the estate that is damaged at the time of construction. But even if the structure is authorized by law, and compensation has been paid for it, yet if it is negligently constructed, maintained or operated, then it is in law not considered a permanent structure but is a continuing nuisance, and a right of action for the damages resulting from the negligence accrues to the person who is injured thereby whenever the injury may occur, unless the right to maintain the nuisance in that particular manner has been compensated for. A structure improperly and insufficiently constructed that unnecessarily disturbs the rights of the adjoining property owners and the continuance of which injury could be obviated by a proper construction is not a permanent structure, and the adjacent landowners have the right to assume that when the defects have been discovered they will be remedied, and a right of action accrues for each successive injury.

Action for damages for overflow of land. Error to the Circuit Court of Carroll county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the October term, 1906. Reversed and remanded. Opinion filed March 13, 1907.

RALPH E. EATON and C. W. MIDDLEKAUFF, for plaintiffs in error.

R. K. WELSH, for defendants in error.

MR. JUSTICE THOMPSON delivered the opinion of the court.

Plaintiffs in error began this suit October 24, 1904, against the defendants in error to recover damages suffered by reason of their farm being flooded and the depositing of sand thereon because of the alleged negligent construction of a railroad across the farm. At the close of plaintiffs' proof defendants made a motion to exclude all the testimony and requested a peremptory instruction to the jury to find for the defendants. The court gave the peremptory instruction asked, and a verdict was returned as directed. Error assigned upon the giving of this instruction is the only question presented by counsel.

In the year 1902 the defendants built a railroad from Ebner to Ashdale across Carroll county. The

plaintiffs thereafter purchased a farm of 120 acres through which this railroad had been built, and received a deed on February 29, 1904, from Mrs. Creager who owned the farm and deeded to the railroad the right of way before the building of the railroad. The railroad runs across this farm in a northerly and southerly direction; the eastern boundary of the farm is a public highway fifty rods east of and parallel with the railroad. East of the farm of plaintiffs and across the highway is the farm of Kellie B. Carpenter. . Sand creek has its source over two miles east of plaintiffs' farm in some high sand hills and runs west across the Carpenter and Melendy farms, the highway and defendants' railroad, and empties into Johnson creek some distance west of the railroad. The railroad crosses Sand creek practically at right angles. The channel of Sand creek is wide and from one to three feet deep. The creek channel is in the bottom of a small valley or water basin varying from two hundred to three hundred feet in width across the Carpenter and Melendy farms. Previous to the building of the railroad this little valley always carried off the surface water and overflow from Sand creek and none of the land outside the water basin was ever overflowed. In times of hard rain and freshets, the water would extend the whole width of the ravine. Where the railroad crosses Sand creek the channel ran in the center of the basin which is 266 feet wide at that place. The water of Sand creek, as far as the memory of witnesses raised in the neighborhood extended, in times of freshet was always heavily charged with sand and ran with a swift current the full width of this water basin across the two farms and carried off the sand leaving but slight traces of it. A vast amount of sand from sandy gulches two miles east has been by the creek carried across these farms for many years without causing damage to either before the railroad was built. Where the railroad crosses Sand creek defendants

built a pile bridge leaving a water way forty feet wide at the bottom and fifty-eight feet wide at the stringers. The opening on either side of the creek channel proper was about six feet in the clear and it was about two feet deeper in the channel. The remainder of the valley being 112 feet on the south and 106 feet on the north was filled up with the railroad embankment, which is about eight feet high. The grade across the farm is built with ditches on either side. After the railroad was built, and before plaintiffs bought the farm, sand began to be deposited in the valley. In 1903 it was a foot and a half deep near the railroad on the right of way, and extended eastward becoming shallower until it ran out. After the Melendys bought the farm, freshets in the spring and in July and August, 1904, deposited sand to such an extent that it filled the bridge up to within twenty-two inches of the stringers and the entire water basin and the creek channel several feet deep, the deposit extending east across the highway and sixty rods east on the Carpenter farm. The Carpenter and Melendy buildings are on the south side of the creek. The valley being filled with sand, the water left its natural course and went southwest, south of the buildings on both farms, striking the railroad sixty rods south of the bridge where it broke across the track and washed through plaintiffs' corn field to Johnson creek. In September the railroad company put in a culvert where the water broke across the track, deepened the ditch on the east side of the railroad, and the water now runs in the new channel to the place sixty rods south of the bridge then along the east side of the railroad to the bridge. Many acres of land have been covered with sand from one to five feet deep and the crops of plaintiffs destroyed by water diverted from the natural channel and running where the ground was never flooded before. The evidence tended to prove that the placing of the embankment in the water basin checked the flow of water and formed a lake, permit-

ting the sand to settle, and thus caused this diversion of the water and the covering of the farm with sand.

Able arguments and exhaustive briefs have been presented on each side. Defendants in error insist that under the authority of K. & S. R. R. Co. v. Horan, 131 Ill. 301; C. & E. I. R. R. Co. v. Loeb, 118 Ill. 203; W., St. L. & P. Ry. Co. v. McDougall, 118 Ill. 229; C. & A. R. R. Co. v. Maher, 91 Ill. 312; City of Centralia v. Wright, 156 Ill. 561; N. S. St. Ry. Co. v. Payne, 192 Ill. 243; N. K. Fairbanks Co. v. Bahre, 213 Ill. 639; C., M. & St. P. Ry. Co. v. Carpenter, 125 Ill. App. 306, and other cases, that the Circuit Court properly instructed a verdict for the defendant. Upon the other side it is argued just as strenuously that on the authority of C. M. Ry. Co. v. Wachter, 123 Ill. 440; O. & M. Ry. Co. v. Thillman, 143 Ill. 127; K. & S. R. R. Co. v. Horan, *supra;* Schlitz Brewing Co. v. Compton, 142 Ill. 511; J. N. W. & S. E. R. R. Co. v. Cox, 91 Ill. 500; A., T. & S. F. Ry. Co. v. Jones, 110 Ill. App. 636, and other cases cited by them, that the court erred in so *instructing* a verdict.

Some of the cases are cited on both sides as authority for their respective contentions. Upon a careful examination of these cases we conclude, that although there may be language in some of them not in harmony with expressions used in argument in others, yet there is no conflict in the principles therein announced. They are in harmony and consistent with each other, when what is said in them is viewed in the light of the facts which were under consideration. The rule of law they announce is, that if the structure complained of and which causes the injury to an adjacent property owner is authorized by law and is carefully and properly constructed with due regard to the rights of others, and there is no negligence either in construction, operation or maintenance, there is no liability, if the right to its construction and maintenance has once been obtained and compensated for. If the right to the construction and maintenance of

such a structure, which in law is considered permanent, has not been paid for, there is but one right of action, and there can be but one recovery for all the damages past and future, and the right of action is in the owner of the estate that is damaged at the time of its construction. But even if the structure is authorized by law and compensation has been paid for it, yet, if it is negligently constructed, maintained or operated, then it is in law not considered a permanent structure but is a continuing nuisance, and a right of action for the damages resulting from the negligence accrues to the person who is injured thereby whenever the injury may occur, unless the right to maintain the nuisance in that particular manner has been compensated for. A structure improperly and insufficiently constructed, that unnecessarily disturbs the rights of the adjoining property owner and the continuance of which injury could be obviated by a proper construction, is not a permanent structure, and the adjacent landowners have the right to assume that when the defects have been discovered they will be remedied and a right of action accrues for each successive injury. In the first case the right of action is in the person owning the land at the time the permanent structure was erected. In the latter case the owner of the land when the structure is erected has a right of action for the injuries he suffers, and if he conveys to another and subsequently the purchaser receives new injury he will have a right of action for the injuries inflicted upon the land after he purchased it. If the owner of the land and the owner of the nuisance should both choose to consider the negligent structure a permanent one and so treat it and the owner of the structure should purchase the right to so maintain it, then there could be no further recovery while the nuisance should be maintained without a change.

In the case before us the declaration alleges "that the defendants in building fills and grades, did negli-

gently, wrongfully and unlawfully build and maintain a certain levee or embankment" "without sufficient opening to permit the natural and free passage of water through said embankment," by reason whereof large quantities of water which before the building of said railroad naturally flowed over the premises of defendants, has been obstructed and diverted over the premises of plaintiffs and the lands thereby become swampy and unfit for cultivation, and covered with sand. There was evidence tending to prove the allegations of the declaration and it was a question for the jury to say whether the structure was negligently and carelessly erected or not. By the building of defendants' railway 218 feet of the valley was filled and a current of water, which in freshets filled the valley and flowed with a rapid current requiring the full width of the valley (which at the railroad is 266 feet wide) to pass off, was attempted to be forced through a space of the width of fifty feet. The bridge over Sand creek should be constructed with due regard to the habits of the stream naturally flowing down the valley. O. & M. Ry. Co. v. Thillman, *supra*. The evidence showed that for many years periodically the water filled the valley and flowed off rapidly without depositing sand to any material extent. Applying the principles deduced from the authorities cited, if the flow of the water down this valley was impeded in its passage so that sand was thereby deposited, the valley filled and the stream diverted to another course, and plaintiffs' crops destroyed because of the negligent construction of the defendants' railroad, then it was a continuing nuisance with a cause of action for each successive injury arising to the person who might be the owner of the land at the time the cause of action accrued until a proper and careful construction should be adopted in place of the negligent construction, if the present construction is negligent.

Counsel for defendants in error insist that this

court, in the case of C., M. & St. P. Ry. Co. v. Car-
penter, which involved a question of damages to the
land east of the highway caused by this bridge, de-
cided that this was a permanent structure. This is
a misapprehension. The opinion in that case shows
that both sides agreed and consented that it was a per-
manent obstruction and that the damages should be
assessed on that basis. No question was raised in
that case for this court to determine whether it was
a permanent structure or a continuing nuisance.
From what has been said, it results that there was
error in directing a verdict for the defendants and
the case is reversed and remanded.

*Reversed and remanded.*