SAVANNAH, FLORIDA AND WESTERN RAILWAY COMPANY, APPELLANT, vs. LOUIS B. DAVIS, APPELLEE.

1. Where a railroad company fails to comply with the provisions of the act of Congress granting the right of way to railroads through the public lands of the United States, the company has no right to run its road through the land of a homesteader who had complied with the terms of the homestead law, although the homesteader had not at the time received his patent from the government, for the homesteader's claim is, under such circumstances, superior to, and not subordinate to that of the company, and if the com any runs its road through his land it becomes a trespasser and is liable to the homesteader in an action for damages.

2. A railroad company that has not complied with the terms of the act of Congress granting to railroad companies the right of way through the public lands, is not in a position to assail the title of a homesteader found in possesion of land through which the company desires to run its road.

3. An action for trespass upon real property must be commenced within three years, otherwise it is barred by the statute of limitation, and a charge, that in a continuing trespass the statute does not begin to run at the time the cause of action accrued, but that the action might be brought at any time during the continuance of the trespass, and that the plaintiff could recover damages for

the whole time whether the suit was commenced in the time prescribed by the statute or not, is erroneous.

4. Where there is a continuing trespass, the party injured is entitled to recover any damages he may sustain in consequence of such trespass, at any time within three years before the commencement of suit, and he can bring successive suits against the defendant as long as the trespass is continued.

Appeal from the Circuit Court for Suwannee county.

The facts of the case are stated in the opinion of the court.

*B. B. Blackwell* for Appellant.

*J. S. White* for Appellee.

MITCHELL, J.: The appellee (plaintiff below) declared against the defendant railway company in trespass *quare clausum fregit*, describing the land as the east half of the northwest quarter of section 29, township 5, south of range 14 east, situate in Suwannee county ; the declaration alleges the cutting of timber, and corn on the land growing, the digging up of the earth, &c.

The defendant railway company pleaded :

1. Not guilty.

2. That the plaintiff was not seized and possessed of the land at the time of the alleged trespass.

3. That the alleged trespass complained of by the plaintiff was not committed within three years next before the commencement of this suit.

4. That the defendant is a corporation, duly organized under the laws of the State of Florida, and authorized to build, construct and operate a railroad in said State, and that said land in the declaration mentioned belonged to the United States at the time of the said entry complained of by the plaintiff, and that such entry was for the purpose of constructing and operating its railroad.

The plaintiff joined issue on the several pleas, the issues were submitted to a jury, and they found for the plaintiff and assessed the damages at $600, and the case is here upon appeal from the order of the Circuit Court overruling motion for a new trial.

The following errors are assigned :

1. In refusing to grant a new trial.

2. In refusing to give to the jury the first and second instructions asked for by defendant, and in qualifying the third instruction.

3. In charging the jury that a corporation may be a trespasser by ordering such an act done as makes the doer a trespasser.

4. In charging the jury that if the original trespass was committed by the Live Oak and Rowlands Bluff Railroad Company, or the Plant Investment Company, and that such company was the agent of defendant, the defendant was liable as *fully* as though the *entire* trespass was committed by the defendant.

The evidence in the case conduces to show that the plaintiff moved upon the land described in the declaration in December, 1879, and that the land at the time belonged to the United States ; that the plaintiff, on the 27th day of January, 1882, filed his application in the United States Land Office at Gainesville, for a homestead entry upon said land, and that he made his final proof, and obtained his final receipt under such homestead entry May 31, 1886.

That the preliminary survey through said land was made in the fall of 1881, and that the company's line was permanently located about the month of May in the year 1882, and that the preliminary line through the land became the permanent line, or nearly so ; that the road was completed through said land in July, 1882, and that it had been ope-

920 SUPREME COURT.

S. F. & W. Ry. Co. vs. Davis—Opinion of Court.

rated by the defendant from the completion thereof to the commencement of this suit.

It is insisted by the appellant railroad company that under the act of Congress of March 3, 1875, granting the right of way to railroad companies through the public lands of the United States, it had the right to enter the land described in the declaration at the time it did enter upon the land, and that any right the complainant had was subordinate to that of the railroad company under said act, and in support of this position cite the case of Van Wyck vs. Knevals, 106 U. S., 360.

But the decision in said case does not support this proposition to the extent insisted upon. The decision in the case of Van Wyck vs. Knevals arose under the act of Congress of July 23, 1866, granting to the State of Kansas, for the use and benefit of the Saint Joseph and Denver City Railroad Company, alternate sections of land along the line of said company, to aid in constructing a road from Elwood, Kansas, westwardly, via Marysville, in the same State, so as to effect a junction with the Union Pacific Railroad, or any branch thereof, &c.

The third section of this act provides that the lands granted "shall inure to the benefit of said company as follows: When the Governor of Kansas shall certify that any section of ten consecutive miles of said road is completed in good, substantial, and workmanlike manner as a first-class railroad, then the Secretary of the Interior shall issue to the said company patents for so many sections of said land hereinafter granted," &c.

The fourth section declares, "that as soon as the said company shall file with the Secretary of the Interior maps of its line designating the route thereof, it shall be the duty of the said Secretary to withdraw from the market the lands granted by this act, in such manner as may be best calcu-

lated to effect the purposes of this act and subserve the public interest. "

The company accepted the act, and filed with the Secretary of the Interior a map of the line of its road.

Mr. Justice Field delivered the opinion of the court in said case, and in construing said act of Congress, says: " The grant is one *in praesenti*, except as its operation is effected by that condition; that is, it imports the transfer, subject to the limitations mentioned, of a separate interest in the lands designated. The difficulty in immediately giving full operation to it arises from the fact that the sections designated as granted are incapable of identification until the route of the road is ' definitely fixed. ' When that route is thus established the grant takes effect upon the sections by relation as of the date of the act of Congress. In that sense we say that the grant is one *in praesenti*. It cuts off all claims, other than those mentioned, to any portion of the lands from the date of the act, and passes the title as fully as though the sections had then been capable of identification. "

"The inquiry then arises, When is the route of the road to be considered as ' definitely fixed' so that the grant attaches to the adjoining sections? The complainant in the court below, who derives his title from the company, contends that the route is definitely fixed, within the meaning of the act of Congress, when the company files with the Secretary of the Interior a map of its lines, approved by its directors, designating the route of the proposed road. On the other hand, the defendant—the appellant here—who acquired his interest by a subsequent entry of the lands and a patent therefor, contends that the route cannot be deemed definitely fixed, so that the grant attaches to any particular sections and cuts off the right of entry thereof until the lands are withdrawn from market by order of the Secretary of the Interior, and notice of the order of withdrawal is com-

municated to the local land offices in the districts in which the lands are situated. "

" We are of opinion that the position of the complianant is the correct one. The route must be considered as 'definitely fixed' when it ceased to be the subject of change at the volition of the company. Until the map is filed with the Secretary of the Interior the company is at liberty to adopt such a route as it may deem best, after an examination of the ground has disclosed the feasibility and advantages of different lines. But when a route is adopted by the company and a map designating it is filed with the Secretary of the Interior and accepted by that officer, the route is established; it is in the language of the act, 'definitely fixed.' and cannot be the subject of future change, so as to affect the grant, except upon legislative consent. "

The same principle is also laid down in the following cases : Leavenworth, Lawrence and Galveston R. R. Co. vs. U. S., 2 Otto, 733 ; Grinnel vs. Railroad Company, 13 Otto, 739 ; Schulenburg vs. Harriman, 21 Wall., 44; Wood vs. Railroad Company, 14 Otto, 329; 2 McCrary (Nebraska), 407 ; Yosemite Valley Case (Hutchings vs. Low), 15 Wall., 77.

In each of the cases cited above the railroad company took the necessary preliminary steps to comply with the act of Congress under which the grant was made ; that is, the company filed with the Secretary of the Interior a map designating the permanent or " fixed " route of the proposed road, made by the surveyors of the company, and adopted by its directors, which was accepted by the Secretary. The several acts of Congress under which these grants were made required such filing of maps, &c.

The act of March 3, 1875, granting to railroads the right of way through the public lands of the United States, in the first section, provides, " That the right of way through the public lands of the United States is hereby granted to any

railroad company duly organized under the laws of any State or Territory, except the District of Columbia, or by the Congress of the United States, which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road * *. "

The fourth section of the act provides: " That any railroad company desiring to secure the benefits of this act * * shall file with the register of the land office for the district wherein such land is located a profile of its road * *. "

To entitle the defendant railroad company to the benefits of this act, it was required to comply with the provisions of the same, but, so far as the evidence shows, the defendant company has done nothing evincing an intention to comply with such provisions, and the question is, by what right did it enter upon the land in question, as it did enter?

It did not enter under the act of Congress granting the right of way over the public lands, because it did not comply with the terms of the act. It had no title to the land, and as it had no right to enter thereon, when it did so enter, it did so as a trespaser, and made itself liable to the plaintiff in such damages as he could prove.

If the company had complied with the requirements of the act by filing with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, and had filed with the register of the land office at Gainesville, Florida, in the district where the land is located, a profile of its road, then it would be in condition to claim the benefits of said act: *provided*, no other claimant had in the meantime, that is, before the company permanently located and adopted its line, acquired a title to the land superior to that of the company, if it had any.

Counsel for defendant (appellant here) insists that the per-

sons who accept the bounty of the general government, in the way of a homestead, accept it subordinate to the general grant of 1875.

Admitting the correctness of this proposition, and still the fact remains, that to make the right of the homesteader subordinate to the general grant, and to confer upon the railroad company the rights and powers claimed by it, it must have complied with the provisions of the act granting it the right of way over the land. To carry out the doctrine contended for by the defendant railroad company, after a homesteader had complied with all the requirements of the homestead laws, after he has filed his claim, made final proof and received a patent for his land, a railroad company has the right under the act of March 3, 1875, without taking a single step entitling it to the benefits of said act, to enter upon the homesteader's land *ad libitum* to damage his land, to destroy his crops, and the homesteader is remediless, *because* his claim is subordinate to the act of March 3, 1875. We can give our assent to no such doctrine. When the homesteader has complied with the terms of the bounty of the government, he has a right in his homestead that the laws will protect. His claim is only subordinate to that of a railroad company when that company has so complied with the law as to make the homesteader's claim subordinate to its own. Failing itself to comply with the terms of the grant of the right of way to railroad companies, the company has no right to assail the title of any one. The evidence, we think, clearly establishes the fact that at least three months before the defendant railroad company permanently located its line through the land described in the declaration, the plaintiff made his homestead entry; and that he thereby acquired an interest in the land that the railroad company was bound to respect.

The railroad company further insists that the right of the

homesteader is only an inchoate right which may never ripen into a perfect title or a greater right.

Admitting this proposition to be true, it does not confer upon the company the rights contended for here. It does not occupy such a position that it can raise such a question.

The thirteenth paragraph of the court's charge is, in substance, that if the grievance complained of was a continuing trespass, the statute of limitations did not begin to run when the cause of action accrued, but that the action might be brought at any time during the continuance of the trespass, and that the plaintiff could recover damages for the whole time, whether the suit was commenced in the time prescribed by the statute or not. This charge, we think, was erroneous.

The statute (McClellan's Digest, 733, section 10,) provides that actions of trespass upon real property can only be commenced within three years. The suit before us was commenced July 7th, 1887, and the declaration alleges that the defendant broke and entered the plaintiff's close July 1st, 1882, and alleges a continuous trespass upon his land by the defendant from the date of the alleged entry to the commencement of the suit. On the day of such entry by the defendant an action accrued to the complainant, and he could have brought successive suits against the defendant so long as the trespass continued. 1 Addison on Torts., section 385, and cases there cited.

But the rule laid down in the cases cited *supra* does not authorize the plaintiff to recover in an action for trespass committed upon his land by the defendant, regardless of time, simply because it was a continuing trespass, nor do we know of any law authorizing such recovery. All claims of the plaintiff against the defendant for trespass upon plaintiff's land were barred by the statute within three years, and

the plaintiff could not recover damages which he sustained more than three years before he commenced suit. But if there was a continuing trespass, and the evidence tends to show that there was, the plaintiff was entitled to recover any damages he sustained in consequence of such trespass at any time within three years before the suit was com· menced.

The amount of the judgment rendered was $600, and the evidence, we think, shows conclusively that the damages sustained by the plaintiff, resulting from the acts of the defendant, amounted to $500. This is the estimate placed upon the damages by the plaintiff himself, and he should be bound by it, and the defendant should also be bound by it, because there is no evidence to show that plaintiff's estimate is not correct. Plaintiff estimates the damages for destruction of timber and cord wood on the right of way at $130, corn destroyed, $30, and rails and pasturage destroyed at $20, making in all $180. This amount the plaintiff clearly was not entitled to, because the destruction of the property occurred when the defendant first entered upon the plaintiff's land, and hence it was barred by the statute. But as it may be that the defendant, by its acts and implied promises of settlement, induced the plaintiff to postpone the commencement of his suit until a large part of his claim was barred, and as the plaintiff, under the evidence, was certainly entitled to some damages in consequence of the defendant's continuing trespass, and as we do not think, under all the ircumstances of the case that damages to the amount of $320 would be excessive, and also for the purpose of saving the expense of further litigation, we will give the plaintiff the option to save his judgment for $320, and interest thereon from the rendition of the same, if he will enter a *remittitur* of $280 as of the date of said judgment. The order will be that the judgment stand as of the date it was

rendered, if the plaintiff enter the *remittitur* indicated, but failing to do this within thirty days after the mandate of this court is received by the Clerk of the Circuit Court, the judgment is reversed and new trial granted.

There are other questions raised to other parts of the court's charge, and refusals to charge as requested by defendant, but we do not consider it important to consider them.