JACKSONVILLE, TAMPA & KEY WEST RAILWAY COMPANY, APPELLANT, VS. A. H. LOCKWOOD ET AL., APPELLEES.

1. In an action by husband and wife, and really in right of the latter, the wife was a competent witness in her own behalf, as the law was on September 20th, 1889.

2. In a grant of land abutting on a highway a description bounding the land granted by the highway conveys to the center of the highway, where the grantor has title to such center. The presumption arising from a deed so bounding the land granted is, in the absence of proof to the contrary, that the grantor owned to the center of the highway.

3. In an action of trespass *quare clausum fregit*, a witness was asked what the property was worth before the railroad company placed the track on it, and she answered that she could have sold the three lots for six thousand dollars. The answer was objected to, but the grounds of objection are not stated in the bill of exceptions : *Held,* that it can not be urged on appeal as an objection to the admission of such evidence, either that she was not qualified to testify to the value of the property as an expert, or that the amount for which she could have sold the land was not relevant, or that she had not been asked any questions to test her qualifications to give an opinion as to the value of the property.

4. Plaintiff's witness was asked on cross-examination if it was not a fact that he had testified in no less than a dozen suits against defendant in the last fifteen months, and the question was excluded by the referee. The ground urged here in support of the question is that its purpose was to show, in connection with the fact that he had a suit pending against the defendant for obstructing a highway, his bias and animus : *Held,* not error.

5. A letter and conversation of the president of the defendant company as to the construction of the railroad, held relevant and admissible on the issue whether such company or another constructed the railroad.

6. In an action of trespass *quare clausum fregit* against a railroad company for constructing and operating a railroad over plaintiff's land covered by the street, the entire damage done to her property by the construction and proper operation of the rail-

road may be recovered in an action, and the recovery should not be limited to damage sustained anterior to the commencement of the action; and it is not error to admit testimony as to the market value of the property before and after the construction of the road. *P. & A. R. R. Co. v. Jackson*, 21 *Fla.*, 146, *and Fla. Sou. R. Co. v. Brown*, 23 *Fla.*, 104, 1 *South. Rep.*, 512, *approved; Sav. Fla. & W. Ry. Co. v. Davis*, 25 *Fla.*, 917, 7 *South. Rep.*, 29, *disapproved, in so far as it is inconsistent with this rule.*

7. The statute gives a referee the same power as to filing additional pleadings as the court making the reference may have; and an order of reference made pursuant to and in the terms of an agreement, that the cause and all matters in controversy therein as the issues are now made up be submitted to a named attorney as by the statute in such cases made and provided, is not a limitation upon the statutory power of the referee as to filing of additional pleadings.

8. The refusal of a referee, on the trial of a cause, to permit a defendant to file a plea of the statute of limitations, will not be held error where neither evidence tending to establish such a plea has been introduced by one of the parties, nor an offer of such evidence been made by the party asking leave to file the plea.

Appeal from the Circuit Court for Putnam county.

The facts in the case are stated in the opinion of the court.

*J. R. Parrott* and *T. M. Day, Jr.*, for Appellant.

*Geo. P. Fowler* for Appellees.

RANEY, C. J. :

Mrs. Lockwood and her husband, Arthur H. Lockwood, the appellees, sued the appellant, a body corporate under the laws of Florida, on May 7th, 1888, in an action of trespass *quare clausum fregit*, alleging that such railroad company on June 25th, 1885, and on

divers other days intervening that day and the institution of the action, with force and arms and without the leave or license of defendants, and against their will, broke and entered upon a certain close of the plaintiffs in the town of Patatka Heights, in Putnam county, and described as Lots 1, 2 and 3, in Block 10, as shown by a plat of the town recorded in the clerk's office of the county; such lots being bounded on the east by Thompson street, and on each of the other three sides by a named street, and also all that land lying in Thompson street, in said town, adjoining and abutting said lots, to the middle and centre of such street; all of which land the plaintiffs are alleged to have been the owners of, and in lawful possession of. The substance of the trespass alleged is grading the street for a railroad track, for the distance of 381 feet in length, by 40 feet in width, and digging, excavating and carrying away dirt, and laying down wooden ties and iron rails, and constructing a railroad track on such street, and using the same as a railroad track for the period above stated, the street as thus used being alleged to be the property of the plaintiffs; and that by such means and the use of the track for daily and frequent passage thereon over the land and close of the plaintiffs, for daily and frequent passage thereon of defendant's railway locomotives, cars and trains, the public road and street aforesaid to and from and over the land and close of plaintiffs was then and there impaired, impeded and obstructed so that plaintiffs could not have ingress and egress or passage to and from and over and across their land and close aforesaid, to-wit: Thompson street, for the passage and travel of carts, wagons, carriages and other vehicles, and by means whereof the said land and close of the plaintiffs became and continued

to be greatly depreciated in value, and injured, and the comfort, convenience and safety of the plaintiffs' family and property greatly impaired and endangered; the "*ad damnum*" being $5,000.

The pleas of the defendant, upon which issue was joined, are the general issue; 2nd, that the plaintiffs have no right or title to the property mentioned; and, 3rd, that the premises described in the declaration are not, and were not at the time stated, the property of the plaintiffs.

I. The first error alleged is as to the ruling of the trial court permitting Mrs. Lockwood to testify. The record states that the plaintiff, to prove the issues on his part, introduced as a witness Mrs. A. H. Lockwood who, upon being duly sworn, testified that she was the plaintiff in this suit, and then stated the place of her residence and the duration of such residence. Here the defendant objected to her testifying, "on the ground of competency, she being co-plaintiff with her husband, and for the further reason that her husband can not testify." This was September 20th, 1889. Under the statutes of this State applicable to the whole period of time covered by this case and its trial, a husband was qualified to testify in his own behalf; and the wife qualified to testify in his behalf where he was a party and could testify; and to testify for herself independently of his having or not having any interest in the cause. Haworth vs. Norris, 28 Fla., 763, 10 South. Rep., 18. The husband, Mr. Lockwood, was properly excluded as a witness, the suit being really one in right of the wife, and Mrs. Lockwood was properly admitted as a witness in her own behalf.. Haworth vs. Norris, *supra*.

II. The theory of the objections made to certain questions propounded to the witness and the answers.

thereto as to the damage sustained by the plaintiffs was, that as plaintiffs' grantor was not shown to have owned to the middle of the street there was no evidence that plaintiffs owned to that point. It is conceded that a description bounding land by a highway conveys to the center of the highway (Florida Southern Ry. Co. vs. Brown, 23 Fla., 104, 1 South. Rep., 512; Sherman vs. McKeon, 38 N. Y., 266; 3 Washburn on Real Property, 420 *et seq.*; Gould vs. Eastern R. R. Co., 142 Mass., 85; Clark vs. Parker, 106 Mass., 554); but is asserted, on the principle of *non dat qui non habet* (Church vs. Stiles, 59 Vt., 642), and very properly, that it does so only where the grantor himself has the title. The abutting proprietor is *prima facie* owner of the soil to the middle of the highway, subject to the easement in favor of the public; the rule being founded on the presumption that the ground was originally taken from such proprietors and for the sole purpose of being used as a highway. Dunham vs. Williams, 37 N. Y., 251; Stiles vs. Curtis, 4 Day, 228, 333. In our judgment the presumption arising from the deed from Hargrove conveying the land and bounding it on the east by Thompson street, is, in the absence of proof to the contrary, that Hargrove owned to the center of the street. Unless this presumption prevails then the title must, in all cases of this kind where there is such description, be deraigned back to an ownership to such center at the time the street was laid out; for if the presumption of such ownership does not obtain in favor of one grantor, then it can not in favor of another. It is not to be presumed that Hargrove conveyed more than he owned, and the deed is as strong evidence of plaintiffs' title to

the center of the street as it is of title to any part of the named lots.

III. Mrs. Lockwood was asked what the property was worth before the railroad company placed the track there, and replied that she could have sold the three lots for six thousand dollars. The record shows that the answer was objected to, but not on what ground. The grounds urged here are that the witness was not qualified to testify to the value of the property as an expert, and the amount for which she could have sold the land was not relevant, and that she had not been asked any questions to test her qualifications to give an opinion as to the value of the property. If there was anything in either of these grounds they should have been urged at the proper time on the trial. There is no evidence that any such objection was made. Such objections can not be urged primarily in the appellate court as against the *admission* of evidence. Gladden vs. State, 12 Fla., 562; Ortiz vs. State, 30 Fla., 256, 11 South. Rep., 611. The case of Missouri Pacific Ry. Co. vs. Coon, 15 Neb., 232, does not conflict with this conclusion.

IV. A witness was asked by the defendant's counsel, on cross-examination, if it was not a fact that he had testified in no less than a dozen suits against the defendant in the last fifteen months. The ground urged in support of the question is that its purpose was to show, in connection with the fact that he had a suit pending against the defendant for obstructing a high-way, his bias and animus. The question was properly excluded.

V. The same witness was called, in rebuttal, and after stating that he knew one Alfred Bishop Mason, and that he was Vice-President of the defendant company in 1885, was shown a letter to the witness from

Mason as such officer, dated Jacksonville, Fla., Oct.
19th, 1885, in which Mason acknowledges a letter from
the witness of the thirteenth of the same month,
.and states that he thought "our" arrangement
was to have the borrow-pit fixed within a reason-
.able time, not within thirty days; and that he
finds on consulting with Genl. Bentley that Mr.
McCarty, "our road master," was instructed a month
ago to fill in at that point as soon as it could be done
without impeding construction; and that the writer
would see that his attention is called to the matter
.again. And saying: "As a railroad man you will
appreciate, better than an outsider could, the neces-
sity we are under of pushing the work southward as
fast as possible," and praying that he would be pa-
tient, as "we" intend to try to satisfy you fully.
Witness then testified that the signature was Mason's
.and that Mason had acknowledged this signature to be
his. Plaintiff then offered the letter in evidence and
defendant objected on the ground of irrelevancy and
incompetency. The witness was then asked whether
he had any conversation with Mason about this time
about the building of the track, and the defendant ob-
.jected on the ground of irrelevancy; the witness re-
plied that he had. In each case the objection was
.overruled and an exception noted. The purpose
in introducing the letter and the conversations, subse-
quently explained, was to overcome the testimony ad-
duced by the defendant to show that another company
had constructed the railroad along Thompson street.
We think the testimony was relevant to this particular
issue, and properly admitted.

VI. The remaining assignments of error, except one,
involve the question whether or not in an action of
this kind there can be a recovery for the entire dam-

age sustained by the plaintiff, or only for damage incurred anterior to the institution of the suit. It is a proposition on which there is very positive conflict of authority. In Pensacola & Atlantic R. R. Co. vs. Jackson, 21 Fla., 146, A. D. 1884—a suit by the appellee to restrain the appellant company from continuing to run cars over its road on his land, and in which it was held that he had by acquiescense lost the right to such relief,—it was also decided that Jackson had not lost his title to the land, and could maintain an appropriate action at law to recover damages, and that the injury being of a permanent nature, the damages recoverable at law might include the whole injury or loss, and such recovery would be a bar to an action for subsequent injuries arising from the same source. The showing as to damages was that the company entered upon the lot of complainant and ousted his tenant, appropriated the middle portion of the lot as a road-bed, tore away fences, dug up trees, removed a dwelling house and built a railroad across the lot and was running trains on it. Again in Florida Southern Ry. Co. vs. Brown, 23 Fla., 104, 1 South. Rep., 512, A. D. 1887, among other points decided was the one that when a person owns a lot on a public street of a town or city, and the fee in the soil as far as the center of the street, the laying of a railroad track along the street, wholly or partly on his soil without his consent, and without taking it and paying just compensation therefor in accordance with the statute regulating the method by which private property may be taken for public use, is an unlawful appropriation of the property of such owner; and that the owner in such a case was entitled to damages for a depreciation of the market or rental value of his premises and for annoyances to his business or to family occupation.

This case also holds that where an adjacent owner of real estate on such a street is not the owner of the fee to the center of the street, though he is not entitled as against a company laying a railroad along the street, by proper authority, to recover damages for the appropriation of the soil of the street or to any incidental injury to his property from noise or smoke or like annoyances, yet he is entitled to the use of the street and may recover damages for any special injury he may sustain, if by reason of the improper laying of the track or its improper use his right to use it is unreasonably abridged or impeded; but that in an action grounded on such injury the diminution of the value of the estate of the plaintiff is not a ground of damage. In this case the declaration showed that the plaintiff owned to the center of the street, but it did not show that the track was on plaintiff's half of the street, or what its exact location in the street was, nor did it allege any negligent construction of the road, nor anything in the nature of a permanent injury, either by subjecting his soil to the additional burden of the railroad or otherwise; the gravamen of the declaration being that by running trains faster than the municipal ordinance permitted, and letting cars stand on the track, the building on plaintiff's lot had been rendered unfit for livery stable purposes, and worth but little to plaintiff, and another lot greatly damaged in value. The case was disposed of by sustaining a demurrer to the declaration, which the Circuit Judge overruled. In Savannah, Florida & Western Ry. Co. vs. Davis, 25 Fla., 917, 7 South. Rep., 29, decided January 10th, 1890, the declaration charged (omitting date and times) 1st, a forcible entry of plaintiff's land, and tearing down, digging up and destroying plaintiff's growing corn; 2nd, taking down and removing and destroying

plaintiff's fence; 3rd, cutting down trees, digging holes. and trenches and throwing up huge embankments upon plaintiff's land, and building a railroad thereon, and thereby rendering the close useless to plaintiff for the purpose for which he had designed them; and 4th, building the railroad and from that time continuously running locomotives and cars thereon, and thereby depriving plaintiff of the use of his close for such time. There was no evidence to sustain $100 of the $600, for which judgment was recovered, and the other $180 which this court allowed to be remitted consisted of items, timber and cordwood, corn, rails and pasturage, as to which there was no subsequent promise taking them out of the statute of limitations; and. the recovery of $320 was for a continued trespass. It is said in the opinion : "The suit before us was commenced July 7th, 1887, and the declaration alleges that the defendant broke and entered the plaintiff's close July 1st, 1882, and alleges a continuous trespass upon his land by the defendant from the date of the alleged entry to the commencement of the suit. On the day of such entry by the defendant an action accrued to the complainant, and he could have brought successive suits against the defendant so long as the trespass continued. But the rule laid down in the cases cited does not authorize the plaintiff to recover in an action for trespass committed upon his land by defendant regardless of time simply because it was a continuing trespass, nor do we know of any law authorizing such recovery. * * But if there was a continuing trespass, and the evidence tends. to show that there was, the plaintiff was entitled to recover any damages he sustained in conseqence of such trespass at any time within three years before the suit was commenced."

The opinion in Pensacola & Atlantic R. R. Co. vs. Jackson, *supra*, relies on Pierce on Railroads, 230, and cases cited in note four, which are: Town of Troy vs. Cheshire R. R. Co., 23 N. H., 83; Fowle vs. N. H. & N. Co., 108 Mass., 352, and 112 Mass., 334; Powers vs. Council Bluffs, 45 Iowa, 652; Cooper vs. Randall, 59 Ill., 317; C. & P. R. R. Co. vs. Stein, 75 Ill., 41; C. & N. W. R. Co. vs. Hoag, 90 Ill., 339; Chicago, R. R. & P. R. Co. vs. Carey, 90 Ill., 514; C. & A. R. Co. vs. Maher, 91 Ill., 312; Chase vs. N. Y. C. R. Co., 24 Barb., 273; Esterbrook vs. Erie R. Co., 51 Barb., 94; C. B. U. P. R. Co. vs. Twine, 23 Kansas, 585; Dickson vs. Chicago, R. I. & P. R. Co., 71 Mo., 575; Lamb vs. Walker, L. R. 3 Q. B. Div., 389; and in Florida Southern Ry. Co. vs. Brown, *supra*; Grand Rapids & I. R. R. Co. vs. Heisel, 38 Mich., 62; and Mix vs. Lafayette, B. & M. R. Co., 67 Ill., 319, and the authorities cited.

In Town of Troy vs. Cheshire Railroad Company, decided in 1851, the action was case against the railroad company, which had built its road along and upon a highway and had destroyed a bridge, and erected upon the site thereof a railroad bridge impassable to public travel, and had caused obstruction and injury to the highway, and occupied with its rails, embankments and excavations, a part of the highway; and the doctrine maintained is that in cases of nuisance if the act done is necessarily injurious and is of a permanent nature, the party injured may at once recover his damages for the whole injury; but if the act done is not necessarily injurious, or if it is contingent whether further injury may arise, the plaintiff can recover only to the date of his writ. "To apply this principle to the case before us," says the opinion, "the town is made by law chargeable with the duty and expense of maintaining the road, which this railroad

company have in part destroyed, and in part obstructed * * * . The railroad is, in its nature and design and use, a permanent structure which can not be assumed to be liable to change; the appropriation of the roadway and materials to the use of the railroad is therefore a permanent appropriation; the use of the land set apart to be used as a highway, by the railroad company for the use of their track, is a permanent diversion of that property to that new use, and a permanent dispossession of the town of it as the place on which to maintain the highway. The injury done to the town is then a permanent injury, at once done by the construction of the railroad, which is dependent upon no contingency of which the law can take notice, and for the injury thus done to them they are entitled to recover at once their reasonable damages." And having stated what these damages were, it is further observed that "these ingredients go to make up the present value of the old road, of which the town has been deprived, and they are to be recovered, not as prospective damages, but as compensation for the injury the town has now sustained." In Fowle vs. N. H. & N. Co., the decision of the Supreme Court of Massachusetts was that a judgment against a railroad corporation for damages not limited to those actually suffered at the date of the writ for locating and constructing their road on the banks of a river so as to divert its course and cause it to wash away the plaintiff's land, is a bar to a like action by him against them for subsequent damages from the same cause; and in the same case, 112 Mass., 334, on a new trial, the conclusion reached was that in an action against a railroad corporation for the construction of its roadbed in such a manner as unnecessarily to turn the current of a stream against the

JANUARY TERM, 1894. 585

.J., T. & K. W. Ry. Co. v. A. H. Lockwood et al.—Opinion of Court.

plaintiff's land and wash away his soil, the plaintiff may recover for the prospective as well as past injury, and a recovery of prospective damages will bar an action for subsequent damage, though caused by an unusual freshet. In the former of these opinions it is said that the embankment was a permanent structure, which without any further act except keeping it in repair, must continue to turn the current of the river in such a manner as gradually to wash away the plaintiff's land; and further, that this case is not like one of illegally flowing land by means of a mill-dam, where the damage is not caused by the mere existence of the dam itself, but by the height at which the water is retained by it according to the manner of its use from time to time, as in Staple vs. Spring, 10 Mass., 72, and Hodges vs. Hodges, 5 Met., 205; nor is it the case of an action against a grantee who after notice to remove it, maintains a nuisance erected by his grantor, as in McDonough vs. Gilman, 3 Allen, 264, and Nichols vs. Boston, 98 Mass., 39. In the second opinion it is said that the record of the action, the recovery in which was pleaded in bar to this action, showed that the plaintiff was not limited to the recovery of damages which had actually accrued before the date of the writ, but took judgment for an amount, only the smallest portion of which was for such damages; and again, that "as a general rule, a new action can not be brought unless there be a new unlawful act and a fresh damage. There is no exception to this rule in the cases of nuisance, where damages after action brought are held not to be recoverable because every continuance of a nuisance is a new injury and not merely a new damage. The case at bar is not to be treated strictly in this respect as an action for an abatable nuisance. More accurately it is an action against the

defendant for the construction of a public work under its charter in such a manner as to cause unnecessary damage by want of reasonable care and skill in its construction. For such an injury the remedy is at common law. And if it results from a cause which is either permanent in its character or which is treated as permanent by the parties, it is proper that entire damage should be assessed with respect to past and probable future injury. This is the course which appears to have been taken in this case, and to allow a recovery here might subject the defendant to double damages." In Cooper vs. Randall, *supra*, the statement of the rule by the Illinois court is: When, however, a wrongful act is done which produces an injury which is not only immediate, but from its very nature, is permanent, and must necessarily continue to produce loss independent of any subsequent wrongful acts, then all damages resulting both before and after the commencement of the suit may be estimated and recovered in one action; and in C. & P. R. Co. vs. Stein, *supra*, it was held, in applying this rule, that where the erection of a railroad bridge across a river in a city causes a permanent injury or depreciation in the value of a lot in the immediate vicinity which is used for dock purposes, such injury is a proper element of damages in a suit by the owner against the company, and it is proper to allow the lot owner to show damages by proving the value of his property before the erection of the bridge, and its value after; or, in other words, to prove how much less the property would sell for in consequence of building the bridge; and in C. & N. W. R. Co. vs. Hoag, where a railroad company before suit brought had wrongfully suffered the water escaping from its tank to flow upon the plaintiff's lot, where it spread and froze several

feet deep, and the ice did not melt until after the commencement of the suit, the opinion says:   The injury sustained by appellee between the commencement of the suit and the trial was not from any wrongful act done by appellant during that time, but followed from acts done before the suit commenced, and was properly recovered for in this action.   In C., R. I. & P. R. R. Co. vs. Carey, the general doctrine is recognized, and in C. & A. R. R. Co. vs. Maher, where a railroad company placed a protection to a draw bridge in a river whereby the approach of vessels to a dock was obstructed and the value of the lot, on which the dock was, was permanently depreciated, the principle was held applicable, and that one recovery in such a case is a bar to any other suits for damages growing out of a continuance of the cause of the injury; and it was further decided that where the person owning the lot at the time the property is injured, conveys the same to another, the latter can not maintain an action for the continuance of the cause of the injury, although the former owner may not have brought any suit for the original injury. See also C. & E. I. R. Co. vs. Loeb, 118 Ill., 203, and Same Company vs. McAuley, *infra*. In C. B. U. P. R. Co. vs. Twine, the decision, in Kansas, was that where the wrong done by a railroad company is temporary in its nature, as in leaving cars unnecessarily on its track, or while engaged in the work of laying down its track, something existing to-day and not to-morrow, fluctuating in extent, and dependent upon the ever repeated·action of the company, only such damages as have fully accrued prior to the commencement of the suit are recoverable, and none based on any presumed continuance or repetition of the wrong; but where the wrong is of a permanent nature

588 SUPREME COURT.

J., T. & K. W. Ry. Co. v. A. H. Lockwood et al.—Opinion of Court.

and springs from the manner in which the track as fully completed affects approach to the lot, then, notwithstanding the right which the state retains to control the manner of use of a highway by a railroad company, even if deemed necessary to compel an entire removal of its track, the lot owner may treat the act of the company as a permanent appropriation of the right of access to his lot and recover as damages the consequent depreciation in value of the lot, and in such cases the recovery of damages is a consent on the part of the lot owner to such manner of occupying the street, and concludes both him and any subsequent owners of the property. Dickson vs. C., R. I. & P. R. Co., *supra*, a Missouri case, is distinguished by its facts from the cases in which the rule is applicable, but the rule is recognized, at least to some extent, by the following quotation from Van Hoozier vs. H. & St. J. R. R., 70 Mo., 145: "In cases of nuisance the rule is well settled, that the plaintiff can not recover for injuries not sustained when his action is commenced. It is equally well settled, that when the injury inflicted is of a permanent character and goes to the entire value of the estate, the whole injury is suffered at once, and a recovery should be had therefor, in a single suit, and no subsequent action can be maintained for the continuance of such injury. But when the wrong does not involve the entire destruction of the estate or its beneficial use, but may be apportioned from time to time, separate actions must be brought to recover the damages so sustained." See also Smith vs. Kansas City, St. J. & C. B. R. R. Co., 98 Mo., 20. In Powers vs. Council Bluffs, an Iowa case, where the injury was held permanent and the damage original, the city had dug a ditch in such a manner that at a certain point it made a cavity, which cut backwards, or up stream,

reaching plaintiff's lot in 1866, when plaintiff began to sustain damage from the action of the water, such ditch having prior to the commencement of the suit become, from such cutting backwards, fifty feet wide and twelve feet deep along the lots. Here the statement of the doctrine is, as in the New Hampshire case, that wherever a nuisance is of such a character that its continuance is necessarily an injury, and where it is of a permanent character that will continue without change from any cause but human labor, then the damage is an original damage, and may be at once fully compensated. It was further held that successive actions are not allowable for damages resulting from negligence combining with a natural cause, and they will only lie where the defendant is continuously in fault. Stodghill vs. C., B. & Q. R. Co., 53 Iowa, 341, holds to the same view, and further decides that a judgment in an action for such an injury would be a bar to a future action to recover for the construction of an embankment which closed the natural channel of a stream and diverted water from a tract of land, or for the abatement of such embankment; and the fact that in such action the jury were erroneously instructed not to take into account any future injury by reason of the maintenance of the embankment would not alter the effect of the judgment as an adjudication of all questions which were or ought to have been tried in the action. See also Bizen vs. O. & H. P. Co., 70 Iowa, 145. The cases of Drady vs. D. M. & Ft. D. R. Co., 57 Iowa, 393; Strange vs. City of Dubuque, 62 Iowa, 303, and Wilson vs. Des Moines, O. & S. R. Co., 67 Iowa, 509, do not conflict with Stodghill vs. C., B. & Q. R. Co., *supra*. In Lamb vs. Walker, an English case, it being an action for injury to the plaintiff's land and buildings by removal of lateral support

through mining operations carried on by the defendant on his own land adjoining, it was held that in addition to existing damage, a further damage, which it was found there would be, was recoverable; but this decision, which was by the Queen's Bench Division, was overruled, and properly we think, by the Court of Appeal in Mitchell vs. Darley Main Colliery Company, L. R., 14 Q. B. Div., 125, where it was held that no right of action arises in such a case until a damage results from the removal of the support, and that a cause or right of action had accrued on each successive subsidence of the plaintiff's land, and that the statute of limitations did not run as to any subsidence until its occurrence.

Of the cases cited in Florida Southern Ry. Co. vs. Brown, *supra*, it can be said as to G. R. & I. R. R. Co. vs. Heisel, 38 Mich., 62, an action of trespass on the case, that the title of the abutting lot-owner did not extend into the street, yet it is declared to be the law that where a railroad has been built in the street without compensation to such abutting owners as own the soil of the street, they have a right of action for any consequent injury to their freehold, such as injury to its market and rental value and annoyance to business or family occupation; but that an abutting owner whose title does not extend into the street can not recover for any injury to his freehold resulting from the presence of a railroad track in the street, but only for damages arising from such misconduct of the company as constitutes a nuisance, such as leaving cars standing for an unreasonable time in front of his premises, unnecessary noises and running trains at unwarrantable speed; and in so far as the proper operation of a road diminishes the value of his estate it is *damnum absque injuria;* and that what is permitted by compe-

tent authority is not a nuisance.   Mix vs. L. B. &
M. R. Co. was a condemnation proceeding under a
statute.

The right of the owner of the fee to recover for a
permanent injury depreciating the value of his land is
also sustained by the Supreme Court of Pennsylvania
in Seely vs. Alden, 61 Penn. St., 302; and there is noth-
ing to the contrary in Bare vs. Hoffman, 79 Penn. St.,
71, where the act was held not to be of such a perma-
nent character as to assume it to continue through all
coming time and justify evidence of permanent injury
to the market value of plaintiff's land.   In Kentucky
the doctrine of the preceding cases, favoring a recov-
ery for the entire damage where the injury is perma-
nent, is sustained.   E. L. & B. S. R. Co. vs. Combs, 10
Bush, 382; J., M. & I. R. R. Co. vs. Estell, 13 *Id.*,
667.

As intimated above, it is not to be denied that there
are authorities which contest the above rule and hold
the measure of damages, in a case where a railroad is
erected on a street in front of an abutting lot, to be
the difference in the rental value of the lot before the
construction of the road, and such value after its con-
struction, and that no damage occurring subsequent to
the institution of an action can be recovered therein,
but there may be successive actions for subsequent
damage.   These cases decide that where the railroad
is constructed without acquisition of the rights and
interests of the abutting lot-owners in the street, the
road is a continuing nuisance as to them, and the rail-
road company is under legal obligation to remove it,
and it is not to be presumed that it will continue the
road permanently, nor can damages be awarded upon
the assumption that it will be so continued, nor, con-
ceding the road was unlawfully constructed, is proof

of permanent diminution in the market value of the lots admissible. Uline vs. N. Y. C. & H. R. R. Co., 101 N. Y., 98; Mahon vs. N. Y. C. R. Co., 24 N. Y., 658; Ford vs. Chicago & N. W. R. Co., 14 Wis., 609; Blesch vs. Chicago & N. W. R. Co., 43 Wis., 183; Carl vs. Sheboygan & Fond du Lac R. Co., 46 Wis., 625. In C. & O. Canal Co. vs. Hitchings, 65 Maine, 140, the filling up of a canal in making a street was held to be such a nuisance. Hopkins vs. W. P. R. Co., 50 Cal., 190; Ford vs. Santa Cruz R. Co., 59 Cal., 290. In the former of these California cases the court said that the complaint was drawn with a double aspect; to recover damages for trespass on that portion of the plaintiff's lot lying within the limits of the street, and as to the other portion to recover special damages caused by an obstruction to the highway, and that under the last aspect proof that the land would sell for less on account of the continuance of the nuisance was not admissible, the reason given being that under the practice there the railroad, which had been built in the street without condemning plaintiff's property, could be abated by judgment in the same action, and if so abated, and the lot had been rendered temporarily valueless by reason of the obstruction, the plaintiff would be restored to the full enjoyment of his property, and yet be paid for it besides; and further, that every injury caused by the continuance of such a nuisance offered a new and distinct cause of action.

Anderson R. Co. vs. Kernodle, 54 Ind., 314, decides that no judgment the court can render in such a case will give the railroad company title to the land, and that damages received can not include the value of the land; and Thompson vs. Morris C. & B. Co. 17 N. J. L., 480, is of the same effect; yet in Indiana, B. & W. R. Co. vs. Eberle, 110 Ind., 547, where a railroad com-

pany had widened its embankment in a highway and put a track on it, the court in remanding the cause for a new trial, said as to the question of the plaintiff's recovery for the permanent depreciation in the value of his abutting lot: That where the character of the injury is permanent and the complaint for damages recognizes the right of the defendant to continue in the use of the property wrongfully appropriated, and to acquire as a result of the suit the plaintiff's title to the right appropriated, it could see no reason why the damages might not be assessed on the basis of the permanent depreciation in the value of the property injured, citing, among other authorities, Henderson vs. N. Y. C. R. Co., 78 N. Y., 423, and City of North Vernon vs. Voegler, 103 Ind., 314; and that where the action was trespass to recover for a past injury, treating the obstruction as unlawful without any recognition of the right of the defendant to continue the obstruction and acquire the right appropriated from the recovery and payment of a judgment, the principle controlling the case of Uline vs. N. Y. C. & H. R. R. Co., *infra*, and the cases cited in it should govern, and only such damages as accrued up to the commencement of the action were recoverable; and it was said that the complaint did not make it entirely clear which remedy the plaintiff intended to pursue.

In Minnesota the courts seem in some cases to recognize the right to an entire recovery where the act is necessarily and permanently injurious, yet they hold cases like the one under consideration not to be within that rule, and in them allow a recovery only up to the institution of the action. Harrington vs. St. P. & S. C. R. Co., 17 Minn., 215; Adams vs. H. & D. R. Co., 18 *Id.*, 260; Hartz vs. St. P. & S. C. R. Co., 21 *Id.*, 358;

38

Brakken vs. M. & St. L. R. Co., 29 *Id.*, 41; Adams vs. C. B. & N. R. Co., 39 *Id.*, 286; Lamm vs. C., St. P. M. & O. R. Co., 45 *Id.*, 71.

The right of the owner of the fee in Florida to recover in one action for the entire damage where the act is necessarily injurious and permanent in its nature is unquestionably affirmed in the cases of P. & A. R. R. Co. vs. Jackson, and F. S. R. Co. vs. Brown, *supra*. We do not understand that the case of S., F. & W. R. Co. vs. Davis, *supra*, was intended to overrule its predecessors; yet we can not say that its conclusions, on the point under discussion, are in keeping with the theories incident to the doctrine of those cases; The case before us was decided in the trial court prior to our decision in the Davis case. That authorities justify the conclusion reached in the Jackson and Brown cases can not be denied; and we think it the better view, and to the extent that the Davis case conflicts with the conclusions reached here and in the Jackson and Brown cases it is overruled.

The declaration before us, in so far as it alleges the grading of the street on the plaintiff's side thereof for a railroad track and constructing a railroad thereon, and consequent injuries therefrom, shows in our judgment an act which is necessarily and permanently injurious to the land of the plaintiff, and a damage to the market value of the property. If it be, as held in Smith vs. Kansas City, St. J. & C. B. R. Co., 98 Mo., 20, that the intent of the trespasser as to the permanency of the injury may be looked to, we fail to find in the circumstances of this cause any purpose upon the part of the railroad authorities to restore the highway. Palatka & I. R. R. Co. vs. State, 23 Fla., 546, 3 South. Rep., 158. The railroad was completed in front of plaintiff's lot in the Summer of 1885, the

track having been laid June 25th, and the action was not commenced until May 7th, 1888, but there is no evidence that any desire to make any such restoration was ever entertained during this time. It moreover must not be forgotten that powers given by the State to railroad companies as to highways are not at all inconsistent with a continuation of the injury done here to the plaintiff. A casual consideration of the case last cited and the railroad statute there discussed will make this apparent.

The plaintiff in the case before us owned to the center of a street forty feet wide. Beginning opposite the north-east corner of her lots facing on the street, the excavation or grade, the sides of which were dug in a slope, runs south, reaching a depth of five feet at or opposite the south-east corner, and about three feet intermediate between the two corners, and other testimony represents the grade as rather deeper; and it extends at the former corner ten feet towards such corner from the center of the street, and fifteen feet at the latter corner; or, in other words, the west side of the excavation at the former corner is ten feet from such corner, and at the latter corner the side of the excavation is only five feet from it, and at intermediate points the distance between the east line of the lots, and the west line of the excavation is 7 1-2, 5 4-12. 1 3-12 feet, and, as stated by one witness, so that no one could pass along there with a team since the laying of the track in 1885. Another witness says the grade goes seventeen feet to west of center of the street, but does not touch plaintiff's property. Before the building of the road the entrance was on this street, and since such building there has been no use of the street, and that entrance, which afforded a view of the St. Johns river, has been necessarily abandoned. Accord-

ing to one witness, the west rail of the track is ten inches east of the center of the street opposite the north-east corner of the plaintiff's lot, and in the center of the street opposite the south-east corner; whereas another witness says it lies over the center of the street to the west at this corner, and another says that the west line of the rails is on the Lockwood side, and the street has been practically closed since the track was laid.

Under the feature of the pleadings last alluded to and the evidence just given, there was no error in admitting testimony as to the market value of the property before and after the construction of the railroad. The excavation and the railroad track, in so far as they were on plaintiff's land, were of themselves and independent of any use of the same, necessarily injurious to the plaintiff's lots, and were, as was the injury done thereby to the lots, permanent in their nature; certainly as much so as anything short of actual demolition can be in its nature as distinguished from its extent. They of themselves necessarily affected the market value of the lots apart from any use which the plaintiff might make of them, and the plaintiff was entitled to have full compensation for such injury. Had any one bought these lots or any part thereof at any time after the railroad company had done its unlawful work, such purchaser would have given for the same only a value equivalent to the then value as affected by such excavation and track, and unless the railroad company makes good the loss in value how is the owner to be made whole? After selling he certainly can not recover for any future wrongful act which the company or any one else may do to the property so sold. In our judgment there was no error in awarding to the plaintiff the entire amount of dam-

age sustained by reason of the construction of the railroad, and the proper operation of the same.

VII. The next question to be considered is the refusal of the referee to permit the defendant to file a plea of the statute of limitations. It is shown by the record that after the issues had been made up in the manner indicated at the outset of this opinion, the counsel for plaintiff and defendant entered into and filed a written agreement that the "above cause and all matters in controversy therein as the issues are now made up in said cause shall be submitted to the Hon. Thomas F. King, a practicing attorney of this court as referee, as by the statute in such cases made and provided," and on the next day an order which "submitted" the case to the named attorney was made pursuant to and in accordance with such agreement, and using its quoted terms. On the cross-examination of Mrs. Lockwood, she stated that the grading in front of her property was done "some time prior to June, 1885," and thereafter defendant's attorney moved to be allowed to file a plea of the statute of limitations on account of what was thus brought out in the evidence, and because the defendant was surprised by the disclosure that the trespass alleged was committed prior to the time laid in the declaration. The statute (sec. 8, p. 858 McClellan's Digest, sec. 1231 Rev. Stats.) gives the referee the same power as to filing additional pleadings or striking out or amending the pleadings as the court making the reference may have. In our judgment the order referred the cause and all matters in controversy therein as the issues were then made up to Judge King for trial, but this did not take away the power given him by the statute to permit an additional plea to be filed. In Robinson vs. Hartridge, 13 Fla., 501, where the trial was before

a jury, defendant's counsel had misapprehended the
effect of the plea of the general issue in trover, and
after the plaintiff had closed his testimony, attempted
to introduce evidence in denial of the plaintiff's title,
and an objection to its introduction was sustained, and
thereupon the defendant asked leave to file a special
plea putting the title in issue, and it was held, under
Section 74 of Blount's Code, Section 97, p. 834 McClel-
lan's Digest, Section 1042 Rev. Stats., that the appli-
cation was duly made, the question of title being
invoked in the controversy between the parties anterior
to the trial. Whether or not the referee erred in his
ruling is to be decided upon the record, and unless it
appears affirmatively that he did err, his action must
be approved. We think that to justify the allowance
of a motion to file a plea of the statute of limitations,
on the trial of a cause, either evidence tending to
establish such plea must have been introduced by one
of the parties, or an offer of such evidence by the
party asking the privilege as to pleading must have
been made. Here there was neither, for if the fact
that the grading was done three years before the time
this action was commenced—May 7th, 1888—the period
stated being that limiting actions for trespass to realty,
there is certainly not enough in the quoted statement
of plaintiff to justify such an inference or to constitute
a basis for allowing the plea. It is true that it does
appear elsewhere in the record that the grading was
done in the Fall of 1884, but there was no renewal
of the motion to file the plea; nor would this evi-
dence of itself have entitled the defendant to the
plea.

In Kansas Pacific R. Co. vs. Mihlman, 17 Kansas,
224, the action was brought in 1874 to recover damages
alleged to have been caused within two years of the

JANUARY TERM, 1894.        599

J., T. & K. W. Ry. Co. v. A. H. Lockwood et al.—Opinion of Court.

commencement of the action, by ditches cut partly on the right-of-way and partly on plaintiff's land and leading to culverts in a ravine which the right-of-way and railroad crossed at right angles; such culverts and ditches having been made prior to 1868. In 1872 and 1873 the land of plaintiff was flooded and his crops destroyed in consequence of the ditches or culverts being unable to carry off the surface water which had usually passed down the ravine after heavy rains, and for this damage the action was brought. It did not appear that the defendant entered upon plaintiff's land or did any work thereon within five years prior to the institution of the action, or that there was any unskillfulness in constructing the road. It is said in the opinion that it was evident the operations on plaintiff's land and not those on the right-of-way were the basis of the cause of action. Two years was the statutory period barring actions for trespasses on real property, and it was held that the cause of action dated from the digging of the ditches, and not from the injury to the crops, and hence the action was barred; that the company had committed its trespass when it dug the ditches, and thereupon plaintiff was entitled to recover all damages done by the act, and that since then the company had done no new act or wrong to Mihlman's property, and that an increase in the damage did not add a new cause of action. The opinion distinguishes the case from those in which the primary act is lawful or there is no invasion of the plaintiff's rights until damage has resulted to him, or where the unlawful act is considered as a continuing one; and it also questions the conclusions in Holmes vs. Wilson, 10 Ad. & Ellis, 503, cited by appellant. In C. & E. I. R. Co. vs. McAuley, 121 Ill., 160, the decision was that upon the construction and putting

into operation of a railroad all damages to contiguous property along the line of the road, present and prospective, from the location and operation of the road, are immediately recoverable and must all be recovered in one action, and if no action is brought until after the lapse of five years, the statute will bar a recovery for any sum. The action was to recover damages for the construction and operation of a railroad near by the plaintiff's lot, the principal ground of complaint, according to the pleadings and evidence, being the running of trains close to the lot and the jarring and vibration of his property, and casting dust, smoke, cinders, ashes, etc., on his dwelling and premises, thereby injuring and depreciating the value of his property. In E. L. & B. S. R. Co. vs. Combs, 11 Bush, 393, it is said: "We have heretofore held in actions for injury to real estate by trespassers that the plaintiff can only recover compensation for the injury done up to the commencement of the action, but that was in case of injuries not continuing and permanent in their character. The injury in this case, if any, is permanent and enduring, and no reason is perceived why a single recovery may not be had for the whole injury to result from the acts complained of;" and in the Illinois case last cited it is said that it follows from this principle that the cause of action sued for accrued in 1872 when the road was constructed and placed in operation, and that the action was barred long before the commencement of the action in 1881, and that the only logical deduction from the Loeb case, *supra*, 118 Ill., 203, was that unless an action is brought to recover after they accrue within the period provided by the statute the cause of action would be barred. Wood on Limitations, 371. In Frenkle vs. Jackson, 30 Fed. Rep., 398, it was held that in all cases in

which a cause of action may exist, and in which it, springs solely from the laying down of the track and the subsequent running of the trains in an ordinary, proper and lawful manner, there is but a single cause of action, involving for the purpose of determining oompensation the question of the diminution in value of the lot caused by the construction of the railroad; it arises at the time of the occupation of the street by the company, and is barred like any other cause of action after the lapse of the prescribed number of years from that date. In this case, and that of McAuley and the citation from Wood on Limitations, *supra*, the distinction between permanent and temporary injuries as to the application of the statute of limitations is drawn. In our judgment it can not be held that the statute began to run in the case at bar until after June 25th, 1885, when the track was laid, if before the operation of the road was commenced, the date of which is not given. It can not be said that the structures or work done by the defendant was completed until the track was laid and ready for operation; it does not appear that there was any abandonment of the work between making the excavation and finishing the track. The plaintiff was entitled to damage for the entire trespass involved in building a railroad on plaintiff's property without her permission, and for operating the same. Her right of recovery was not barred and the referee did not err in denying the motion.

VIII. The only remaining points are as to the sufficiency of the evidence to sustain the amount of the recovery, and as to the railroad having been constructed by the defendant company. As to the former point there is no doubt whatever; and as to the latter we think it sufficient beyond the power of an appellate

court to interfere. The theory of the defendant company, that the Palatka & Indian River Railway Company constructed the road, seems too unsatisfactory, in view of the testimony to the contrary, when we consider the statement of the vice-president of the defendant that the two companies were the same, and the further fact of the absence of testimony of any managing officers of the companies showing that the defendant company did not, and that the Palatka & Indian River Railway Company did, construct it. We do not see that the referee has erred in his findings and judgment, and the same are approved.

Judgment affirmed.